J. D. MINGUS, Appellant, v. JOHN DAUGHERTY *et al.*,
Appellees.

1. Sureties on Lease: DISCHARGE BY LANDLORD'S NEGLECT TO
ENFORCE LIEN. A landlord's lien for rent due is a security, and if
through the act or neglect of the landlord that security is lost, in
whole or in part, without the consent of a personal surety on the
lease, it will operate as a discharge of the surety to the extent of the
security lost.

2. ———: ———: QUESTIONS FOR JURY. But the sureties on a lease
are not discharged merely because the landlord has not enforced his
lien. He must have been negligent in not enforcing it, and loss must
have resulted from his negligence. Whether or not he has been neg-
ligent, under the circumstances, is a question for the jury; as is also
the amount of the loss resulting therefrom.

*Appeal from Polk District Court.*—HON. MARCUS
KAVANAGH, Judge.

THURSDAY, JANUARY 19, 1893.

THIS action is upon a written lease signed by the
plaintiff and the defendants, whereby the plaintiff
leased to the defendants certain lots for use as a brick-
yard for three years ending January 1, 1887. By the
lease, defendants were to pay as rent sixty thousand
No. 1 bricks, delivered September 1, 1886, and, on
failure to pay in bricks at the time, "then they agreed
to pay in cash one hundred and twenty dollars, with
interest from the first day of each year at ten per cent.
per annum." The plaintiff alleges a failure to deliver
the bricks, and asks a money judgment. The defend-
ants Mills and Ross answered, alleging that they were
sureties on said agreement, as the plaintiff knew at the
time it was executed; that on or about September 1,
1886, and for a long time thereafter, Daugherty had
sixty thousand bricks on said premises ready for deliv-

ery, and that they so informed the plaintiff, and requested him to take and receive the same, which he agreed to do; that the plaintiff, by agreement with Daugherty, and without the agreement and consent of the sureties, extended the time for the payment of said rent and the delivery of the bricks to the first day of September, 1887, in consideration of Daugherty's oral agreement to lease the premises another year. They alleged as a further defense the following: "That said plaintiff had, under the laws of the state, a landlord's lien on said bricks for said rent, under said agreement which he neglected and refused to avail himself of, and neglected and refused to take and receive said bricks, but left the same with said Daugherty, and allowed said Daugherty to sell and convert the same to his own use." The plaintiff replied, denying each affirmative allegation of the answer. The case was tried by a jury, and a verdict returned in favor of the plaintiff against Daugherty, and in favor of Mills and Ross. Judgment was entered on the verdict, and the plaintiff appeals from the judgment in favor of Mills and Ross.—
*Reversed.*

*D. H. Emery*, for appellant.

*Cole, McVey & Cheshire*, for appellees.

GIVEN, J.—I. The court gave an instruction as follows: "The defendant Daugherty, in this case, is liable for the amount claimed. It appears from the uncontradicted testimony that the plaintiff in this case had a landlord's lien upon said premises and property thereon; that he failed and refused to pursue this lien, as against the property of the defendant Daugherty. If the said plaintiff knew that the said Mills and Ross were simply sureties upon said contract of lease at the time said contract was made, up to the time said

1. SURETIES on lease: discharge by landlord's neglect to enforce lien.

sixty thousand brick were due and payable, then it was his duty to have enforced his landlord's lien. The only question for you to determine, then, is whether or not the said plaintiff knew that said Mills and Ross were sureties for said Daugherty. If the defendants have proved, by the preponderance of testimony, that the plaintiff knew said Mills and Ross were sureties for the defendant Daugherty, and the plaintiff had such knowledge in September, 1886, then your verdict will be for defendants Mills and Ross. If it is not so proved, then your verdict will be for the plaintiff. A surety is one who becomes responsible for the debt of another.''

The only instructions given were the usual ones as to preponderance of evidence and credibility of witnesses. In this instruction the court accepts it as established that the plaintiff had a landlord's lien ''upon said premises and property therein,'' and that he failed to pursue it, and instructs that if the jury finds that the appellant knew in September, 1886, that Mills and Ross were sureties, they should find for them. Conceding all that is assumed in this instruction, we have the question whether the appellant's failure to pursue his landlord's lien releases the sureties, as to any part of the debt. It is unquestionably the law that a surety is entitled to the benefit of all securities in the hands of the creditor, and if such securities, or any part thereof, are lost by his fault, without the consent of the surety, the surety is exonerated to that extent. In *Sherraden v. Parker*, 24 Iowa, 28, the rule is stated as follows: ''In view of the peculiar relations in which the surety stands to the principal and creditor, the doctrine must be that the surety may claim his release when the creditor surrenders any hold, or waives any right, in the lien, which would have resulted in the discharge of the debt. Thus, in *Kuhns v. Bank*, 2 Watts, 136, it is held that if a levy be withdrawn, or other securities abandoned, to the injury of

the surety, and without his consent, he will have an undoubted right to protection." In *Burr v. Boyer*, 2 Neb. 265, it was held that a "surety will be discharged by the neglect of the creditor to have a chattel mortgage recorded that was made to him by the debtor to secure the debt, if such neglect occasion a loss of the security." See, also, *Toomer v. Dickerson*, 37 Ga. 428. The reason upon which the rule is grounded is that whatever security the creditor holds is for the benefit of the surety, as well as for, himself, and, if it be lost through the fault of the creditor, he must bear the loss. Cases within this rule are clearly distinguishable from cases where A, holding the obligation of B, on which C is security, fails to sue at maturity, and B thereafter becomes insolvent. In such case the creditor holds no other security than the promise of C, and is not in fault by merely failing to sue the principal, unless required by C to do so.

The appellant conceded that it is the duty of one holding an obligation against a principal and sureties to retain all collateral securities he may hold against the principal, and not voluntarily surrender them. He contends, however, that the creditor is not required "to be active, and prosecute to judgment and execution such securities, * * * and incur expense of time and money, to relieve the surety of the obligations of his contract." There are cases holding that a mere passive delay in prosecuting a remedy against a principal does not operate to discharge a surety. *Benedict v. Olson*, 37 Minn. 431; 35 N. W. Rep. 10; *Edwards v. Dargan*, 8 S. E. Rep. (S. C.) 858; *Bank v. Homesley*, 99 N. C. 531; 6 S. E. Rep. 797. When, by delay, the security, is lost, as by the expiration of the lien constituting the security, by the running of the statute of limitations, and the like, the delay is not merely passive, but an omission where diligence is required. In *Schroeppell v. Shaw*, 3 N. Y. 457, it is said: "For the

defendant [creditor] to omit an act necessary to render the assignment effectual was equivalent to a surrender of the surety to the principal debtor. It was like the case of the creditor taking a mortgage upon personal property and neglecting to file it, or the omission of a creditor to protest a note held by him as collateral security, so as to charge the indorser. In these and in similar cases, a surety whose means of indemnity have been impaired by the neglect of the creditor to do what was necessary to protect the security might well insist upon his right to be discharged to the extent of the loss sustained by reason of such neglect. * * * The nature of the security required something to be done at once by the creditor, to make it a valid security; and hence the law should, as it doubtless did, imply an agreement on his part to perform that act without which the security was invalid. An omission to do this would be gross neglect in an agent, bailor or trustee, and would be a breach of good faith on the part of the creditor towards the surety.''

A landlord's lien is clearly a security given to and held by him for the payment of the rent. It is as much a security held by him as would be a mortgage taken to secure the same payment, and we see no good reason why the rules stated above do not apply to both forms of security alike. It is argued that the purpose of landlords in requiring personal security is that they may avoid harassing their tenants by attachments. The same might be said in any other case where security is taken in addition to personal security. The security afforded by a landlord's lien inures to the benefit of the personal surety, the same as any other security held by the creditor; and it may be because of this lien given by the statute that individuals are the more ready to stand as sureties for the payment of rent. Our conclusion is that, when a creditor holds a land-lord's lien for the debt due to him, it is a security; and

if, through his act or neglect, that security is lost, in whole or in part, without the consent of a personal surety, it works a discharge of the personal surety, to the extent of the security lost.

II.   It will be observed that only one of the defenses set up by the appellees was submitted to the

2. —: —: questions for jury.

jury.   There was evidence tending to support the defense of a new agreement and extension of time.   We think that issue should have been submitted; but, as this omission is without prejudice to the appellant, we do not further consider it.

The instruction given assumes that the appellant had a landlord's lien "upon said premises and property thereon," and failed and refused to pursue it.   The record does not justify these assumptions.   The answer only claimed that the appellant had a lien upon the sixty thousand bricks; and yet the instruction declares that he had a lien upon the premises, and property thereon of the defendant Daugherty, instead of limiting it to the sixty thousand bricks.   Whether or not he had a lien upon the bricks has not been put in question, and is therefore not determined.

A loss of securities by the fault of the creditor only releases the surety to the extent of the loss.   This instruction assumes that the loss in this case was to the full amount of the debt.   The amount of the loss depends upon the extent of the lien, and the value of the property to which it attached.   The lien was for the rent of the entire term.   *Gilbert v. Greenbaum*, 56 Iowa, 211.   It was for the jury to find the amount of the loss.   All that the law required of the appellant was the exercise of reasonable diligence in preserving his lien.   What would be reasonable diligence depends upon the facts and circumstances.   So long as he had no reason to anticipate loss by delay, he was not bound to proceed, nor was he bound to bring an action, if the

amount of property covered by the lien did not justify it. There was evidence tending to show that the appellant had no reason to anticipate a loss of the bricks by delaying, and that all the bricks were sold and removed by the latter part of October, 1886. Whether it was the duty of the appellant to enforce his landlord's lien was a question that should have been submitted to the jury. It is not the law that the sureties are entitled to be exonerated merely because he did not enforce it. He must have been negligent in not doing so, and loss resulted from his negligence.

For the errors pointed out, the judgment of the district court is REVERSED.