130 N.J. Super. 486 (1974)
327 A.2d 683
JOHN P. LANGEVELD, PLAINTIFF,
v.
L.R.Z.H. CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided October 9, 1974.
*487 Mr. Robert E. McGuire for plaintiff (Messrs. Randall, Randall & McGuire, attorneys).
Mr. Joseph A. Higgins, Jr. for defendant Joseph A. Higgins, Sr.
GELMAN, J.S.C.
Plaintiff moves for summary judgment against defendant Joseph A. Higgins, Sr., on his personal guaranty of payment of a promissory note made by defendant L.R.Z.H. Corporation.
The facts are not in dispute. On March 10, 1972, L.R.Z.H. executed and delivered its promissory note in the amount of $57,500 to plaintiff. As security for the note L.R.Z.H. on the same date executed and delivered to plaintiff a mortgage covering lands which it owned in the Borough of Montvale. On the date the mortgage was delivered, there were in existence two prior mortgages on the same property, held, respectively, by the Howard Savings Bank and Albert and Grace Castellane. The Howard Savings mortgage secured a construction loan made by it to L.R.Z.H. in the amount of $825,000, of which approximately $661,000 had been advanced on the date the note and mortgage were given to plaintiff. On that date there was also due and owing on the Castellane mortgage the sum of $54,987.39, plus accrued interest.
*488 Plaintiff's mortgage contained a provision subordinating it to the lien of the Howard Savings mortgage as to all prior and future advances made by that mortgagee. After plaintiff received his mortgage Howard Savings advanced to L.R.Z.H. the full principal amount of the construction loan, or $825,000.
L.R.Z.H. defaulted on all of the mortgages, and foreclosure proceedings were commenced against it by the holder of a fourth mortgage. A final judgment of foreclosure was entered in that action fixing the amounts due the respective mortgagees (inclusive of interest) and their priorities as follows: (1) Howard Savings Bank  $989,154.27; (2) the Castellanes  $55,016.60, and (3) plaintiff  $77,145.80. A foreclosure sale was ordered and the sale was held on August 28, 1974, at which defendant Higgins submitted the highest bid, at $1,080,000. By the date of the sale the amount due Howard Savings was in excess of $1,058,000 by reason of additional interest having accrued, plus costs and attorney's fees. Hence, the amount realized at the sale was insufficient to satisfy the second mortgage, and of course plaintiff received nothing on his third mortgage.
Defendant Higgins acknowledges his position as an unconditional guarantor of payment on the promissory note issued to plaintiff by L.R.Z.H. Corporation. He urges, however, that he was discharged from that liability since plaintiff failed to record his mortgage until March 1, 1973, almost one year after the date the mortgage was delivered to plaintiff by L.R.Z.H. The argument is that the failure to record the mortgage "impaired" the collateral held by plaintiff, thus discharging him by reason of § 3-606 of the Uniform Commercial Code, N.J.S.A. 12A:3-606. That section provides in pertinent part that:
(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

* * * * * * * *
(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
*489 This section of the UCC has not been the subject of any reported decision in this State, nor are there any pre-UCC decisions which reached the issue raised here. See New Jersey Study Comment, N.J.S.A. 12A:3-606.[*]
Prior to the adoption of the UCC it was generally recognized that the failure to record a security instrument such as a mortgage discharged the surety or guarantor to the extent that his right of subrogation to the collateral was diminished or his risk of loss was unreasonably increased. Thus, in Providence, Fall River & N.S. Co. v. Mass. Bay S.S. Corp., 38 F.2d 674 (D. Mass. 1930), the seller of a vessel took back a purchase money first mortgage which it failed to record for approximately seven months. Under the terms of the contract of sale the purchaser had furnished a surety bond against maritime liens to which the vessel might become exposed prior to payment of the mortgage. As a result of the failure to record the mortgage, liens were filed which were entitled to priority over the mortgage. The court held that the surety was discharged as to those liens which had gained priority over the mortgage by reason of the delay in recording.
In D.W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85 (Sup.Ct. 1966), defendant was an unconditional guarantor of payment of conditional sales contracts which it had assigned to plaintiff. The contracts were not *490 recorded by plaintiff, as a result of which the lien rights of the conditional seller were disallowed after the conditional vendee filed in bankruptcy. In an action to enforce the guaranty the Supreme Court of Arizona held that defendant-guarantor was discharged from his liability on the guaranty because plaintiff had impaired the value of the collateral to which the guarantor had the right of subrogation. The court said:
In view of the above we are of the opinion that the plaintiff had an implied-in-law duty to record the sales contracts, that performance of the duty was not waived by the unconditional guaranties executed by defendant, that the defendant was entitled to be released from liability in his guaranties to the extent of his loss caused by the failure to record * * *. [419 P.2d at 89]
See also, Behlen Manf. Co. v. First Nat'l Bank of Englewood, 28 Colo. App. 300, 472 P.2d 703 (App. Ct. 1970) (failure to record real estate mortgage discharged unconditional guarantor); Neb. State Bank v. May, 117 Neb. 262, 220 N.W. 276 (Sup. Ct. 1928); Mingus v. Daugherty, 87 Iowa 56, 54 N.W. 66 (Sup. Ct. 1893); Restatement, Security, § 132. The prevailing view is stated in 74 Am. Jur.2d, Suretyship, §§ 86, 93, as follows:
A surety is entitled to be subrogated to the benefit of all the securities and means of payment under the creditor's control. Therefore, in the absence of assent, waiver, or estoppel, he is generally released by any act of the creditor which deprives him of such right.

* * * * * * * *
The collateral security taken by a creditor may require some act on the part of the creditor to make it a valid security. Where such is the case, the law implies an agreement on his part to perform that act. If he neglects or fails to do so and the security is thereby lost or impaired, the surety may be discharged to the extent of his loss or injury. Thus, where collateral security is given in the form of a mortgage, deed of trust, or similar instrument, and the statute requires it to be filed or recorded in order to make it valid against innocent purchasers, it is the duty of the creditor to see that the instrument is properly filed or recorded; and if he negligently fails to act, the surety will be discharged to the extent of the loss thereby occasioned or perhaps, completely discharged.
*491 The language of UCC § 3-606 unmistakably adopts what had been the majority position prior to its enactment. While the comments to the Code do not furnish any guidelines to determine what conduct on the part of the holder constitutes unjustifiable impairment of the collateral, at the very least it may be said that the negligent failure to record a mortgage or otherwise perfect a security interest in the collaterized property will discharge a guarantor to the extent that the value of the collateral has been diminished. Cf. UCC § 9-207 (1); N.J.S.A. 12A:9-207 (1).
The reported decisions elsewhere under § 3-606 confirm this view. In Shaffer v. Davidson, 445 P.2d 13 (Wyo. Sup. Ct. 1968), the secured party failed to record a chattel mortgage on an automobile. His action against the accommodation endorser of the note, for which the mortgage had been given as security, was dismissed, the Court stating:
The evidence shows Shaffer not only accepted the promissory note but also the chattel mortgage upon the motor vehicle given by Nank and Mrs. Davidson as security for the repayment of the $200 borrowed by Nank, and that Shaffer was given the certificate of title for the mortgaged vehicle. When Shaffer failed or neglected to do that which the code required him to do in order that the security placed in his hands became available for the protection of the accommodation maker of the promissory note, Shaffer discharged Mrs. Davidson from her obligation and erased her debt to him. [at 17]
Before a party may be deemed discharged under § 3-606 he must show not only that the holder's conduct was unreasonable but also that the value of his right of recourse against the collateral was diminished, i.e., that he suffered an actual and not a hypothetical loss attributable to the holder's conduct. Hence, in Still v. Citizens Bank of Drumright, 6 UCCRS 813 (Okla. Ct. App. 1969), the court held that an accommodation endorser was not discharged by the holder's failure to record a second mortgage on real estate, since the evidence disclosed that the mortgage had no value at the time it was given and at the time of the foreclosure of the first mortgage. For cases reaching comparable results on *492 different facts, see Hunter v. Community Loan & Inv. Corp., 127 Ga. App. 142, 193 S.E.2d 55 (App. Ct. 1972); Hurt v. Citizens Trust Co., 128 Ga. App. 224, 196 S.E.2d 349 (App. Ct. 1973); Pancoast v. Century Homes, Inc., 8 UCCRS 1289 (Okla. Ct. App. 1971).
On the facts of the case at bar it may be assumed that plaintiff's delay in recording his mortgage was unjustifiable. It is nevertheless apparent that defendant Higgins suffered no loss thereby. Both the Howard Savings and the Castellane mortgages were prior to plaintiff's mortgage when he received it, and by the time of the foreclosure sale these mortgages remained the only liens prior to plaintiff's. The delay in recording occasioned no loss in priority of the mortgage and cannot be said to have impaired the value of the mortgage as collateral nor to have diminished defendant's right of subrogation to the collateral. The foreclosure sale result established conclusively that plaintiff's mortgage had no value in fact, and plaintiff's conduct did not cause any loss to the defendant so as to effect either a limited or total discharge under § 3-606.
An order for summary judgment in favor of plaintiff may be submitted in accordance with the rules of court.
NOTES
[*] There is some suggestion in pre-UCC New Jersey decisions that an unconditional guarantor of payment is not discharged by reason of the holder's conduct in dealing with the collateral. See Superior Finance Corp. v. McCrane Motors, Inc., 116 N.J.L. 435, 436 (E. & A. 1936); cf. Pfeiffer v. Crossley, 91 N.J.L. 433, 434 (Sup. Ct. 1918). Reliance on these pre-UCC decisions in cases arising after the adoption of the UCC in this state (e.g., Bank of New Jersey v. Heine, 464 F.2d 1161 (3 Cir.1972); Nation Wide, Inc. v. Scullin, 256 F. Supp. 929 (D.N.J. 1966)) would seem to be misplaced since § 3-606 discharges a party to the instrument regardless of his status as an unconditional guarantor if the conditions of that section are met. See Uniform Commercial Code Comment to § 3-606, N.J.S.A. 12A:3-606.