668 P.2d 320

Phillip J. CORDOVA, Plaintiff-Appellant,

v.

LEE GALLES OLDSMOBILE, INC. d/b/a Lee Galles Oldsmobile and General Motors Acceptance Corporation, Defendants-Appellees.

No. 6031.

Court of Appeals of New Mexico.

July 19, 1983.

Angela J. Jewell, Tommy Jewell, Jewell & Jewell, Albuquerque, for plaintiff-appellant.

Barbara L. Shapiro, Judy K. Kelley, Poole, Tinnin & Martin, P.C., Albuquerque, for defendants-appellees.

## OPINION

BIVINS, Judge.

Plaintiff appeals a summary judgment entered in favor of defendants Lee Galles Oldsmobile (Lee Galles) and General Motors Acceptance Corporation (GMAC). We affirm.

Plaintiff bought a 1979 Oldsmobile from Lee Galles in February of 1980. He financed the purchase price in part through an installment sales contract assigned to GMAC, which created a security interest in the car.

By May 1981, plaintiff found he could no longer make the monthly payments; he voluntarily surrendered the car to Lee Galles on July 8, 1981, indicating at the time his desire to redeem. On July 10, plaintiff received a notice from GMAC informing him that defendants would hold the car until July 23, 1981.

Sometime during the period from repossession until July 23, 1981, an employee of Lee Galles inadvertently allowed the Albuquerque Police Department (APD) to borrow the car; the APD wanted it for undercover vice-squad operations. While under APD control the car sustained $110 damages as the result of an accident. Lee Galles repaired the car at its own expense.

On July 16 or 17, 1981, plaintiff became suspicious that the APD had the car, but he did not confirm this until July 24, 1981.

Plaintiff never tendered any payments in order to redeem the car. Defendants sold it on August 28, 1981.

Plaintiff's complaint sets forth the following theories: (1) violation of the Uniform Commercial Code; (2) conversion; (3) misrepresentation; and (4) violation of the Unfair Practices Act. By stipulation the Unfair Practices Act count was stricken at the summary judgment hearing. Plaintiff presents no authority or argument for his misrepresentation claim; he has abandoned

**206**

this theory. *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.,* 84 N.M. 524, 505 P.2d 867 (Ct.App.1972).

Plaintiff challenges the granting of summary judgment in favor of defendants and the denial of his own motion for summary judgment. We consider only the first question, because plaintiff took his appeal only from the summary judgment in favor of defendants. We, therefore, discuss the correctness of summary judgment with respect to plaintiff's claims of violation of the Uniform Commercial Code and conversion.

■ We will uphold a summary judgment so long as no genuine issue of fact exists. *See Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

I  UCC Claim.

Plaintiff contends that the loan of the car to APD violated NMSA 1978, § 55–9–101 *et seq.* (hereinafter cited by UCC section numbers only), specifically §§ 9–507 and 9–207.

■ Section 9–507 covers a secured party's liability for failure to comply with part 5 of the UCC (§§ 9–501 to 9–507) which deals with "Default". In order to state a claim under this section, the injured party must show a "disposition" of the collateral.

It is not disputed that Lee Galles loaned the car to APD temporarily, that APD gave Lee Galles no consideration in return, and that plaintiff could have retrieved the car at any time. One court has defined "disposition" as used in Article 9 of the UCC to mean "a permanent transfer of possession." *Mechanics Nat. Bank of Worcester v. Gaucher,* 7 Mass.App.Ct. 143, 386 N.E.2d 1052, 1055 (1979). Section 9–504(1) provides in part that "A secured party after default may sell, lease or otherwise dispose of any or all of the collateral . . . ." We do not read the phrase "otherwise dispose of" as contemplating a loan such as made here to APD. Moreover, Lee Galles never intended a disposition by that loan. To so hold we would have to believe that Lee Galles and GMAC wished to forego collection of any money on the indebtedness. The only infer-

ence from undisputed facts leads us to the opposite conclusion.

We therefore hold that the loan did not constitute a disposition. The disposition of the car took place on August 28, 1981, when Lee Galles sold it. Plaintiff does not challenge this disposition, only the loan to the APD. Since no disposition occurred as a result of the loan, § 9–507 does not apply.

Plaintiff's claim, if any, must arise from § 9–207. That section imposes a duty on the secured party to use reasonable care in the custody and preservation of the collateral while in its possession and makes the secured party liable for any loss resulting from violation of the section. *See Farmers State Bank In Afton v. Ballew,* 626 P.2d 337 (Okl.Ct.App.1981).

Defendants admit the car was damaged while in the possession of APD. Lee Galles repaired the damage at a cost of $110. Plaintiff does not base his claim on this loss.

Because the police used the car for undercover vice-squad operations, plaintiff claims that further use of the car by him would have jeopardized his safety and the safety of his family. Plaintiff works for the Albuquerque Rehabilitation Department, drives a city vehicle and wears a badge. He says that people often mistake him for a police officer. Due to the unique color combination of the car in question, the use made of the car by the APD and the fact that people tended to identify plaintiff as a member of the police department, plaintiff chose not to redeem the car. According to plaintiff, the use made by the APD was tantamount to a total loss of the car as far as he and his family were concerned.

While we do not doubt the sincerity of plaintiff's concerns, he may not recover unless he demonstrates he had a legal right to the car.

Under § 9–506 plaintiff had a right to redeem the car at any time before disposition. Even though the notice gave a date of July 23, 1981, plaintiff could have redeemed anytime up until August 28, 1981, the date the car was sold. The notice from GMAC required that plaintiff, in order to

redeem, make up the two delinquent payments, plus $21.79 in late charges, for a total of $456.83. Plaintiff never tendered this or any other payment.

 We hold that in order for plaintiff to establish his right to claim any loss under § 9–207, he must have shown his ability to regain possessory interest in the car by making a tender, *see Clark Equipment Co. v. Mastelotto, Inc.*, 87 Cal.App.3d 88, 150 Cal.Rptr. 797 (1978), unless, as argued by plaintiff, tender was waived.

Plaintiff claims that after use of the car by the APD, any tender would amount to an idle gesture and was therefore unnecessary. He contends that the use made of the car by the APD destroyed its entire value to him and thereby excused him from making a tender.

We recognize that under some circumstances a tender may be waived, but in such a case a plaintiff must show (1) that he suffered a loss and (2) that he was willing and able to make a tender.

Here plaintiff cannot demonstrate any loss. Lee Galles sold the car for $6,000; plaintiff does not challenge the commercial reasonableness of the sale. At the time of the sale plaintiff still owed $6,589.13 on the car, but the installment contract precluded Lee Galles from collecting the deficiency. Although plaintiff made payments of more than $3,000 prior to repossession, we hold that any loss under these circumstances was suffered by Lee Galles, not plaintiff. Thus, even if we were to hold that plaintiff did not have an obligation to make a tender, without a loss he cannot recover. *See Cleveland Chair Co. v. United States*, 557 F.2d 244 (Ct.Cl.1977); *Langeveld v. L.R. Z.H. Corporation*, 130 N.J.Super. 486, 327 A.2d 683 (1974).

II  Conversion.

Plaintiff claims the loan of the car to the APD amounted to a conversion of the collateral. *See Borden v. District of Columbia*, 417 A.2d 402 (D.C.Ct.App.1980). This Court defined conversion in *Taylor v.*

*McBee,* 78 N.M. 503, 433 P.2d 88 (Ct.App. 1967):

> Conversion is the wrongful possession of, or the exercise of dominion over, a chattel to the exclusion or in defiance of the owner's right thereto; or an unauthorized and injurious use thereof; or the wrongful detention after demand therefor by the owner.

Lee Galles had lawful possession of the car. Section 9–503. Plaintiff could only regain his right to possession by redemption. He did not redeem. Since a cause of action in conversion operates to protect the rights only of those entitled to lawful possession, plaintiff has no claim in conversion.

We affirm the summary judgment in defendants' favor. Plaintiff is to bear the appellate cost.

IT IS SO ORDERED.

WOOD and LOPEZ, JJ., concur.