**IFG LEASING COMPANY,
Plaintiff and Appellee,**

v.

**Rodney F. GORDON; Jim Hansen; and Frank A. Nelson; Bonneville Development Corp., dba Ramada Inn of Evanston, Wyoming; and Ecotek National Corp., aka Irving Financial Corp., Defendants and Appellants.**

No. 20634.

Supreme Court of Utah.

May 22, 1989.

John G. Marshall, James N. Barber, Salt Lake City, for defendants and appellants.

J. Bruce Reading, Michael W. Spence, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

## I

Plaintiff IFG Leasing Company ("IFG") brought this action against the individual defendants to recover a deficiency judgment resulting from Bonneville Development Corporation's default under several leases. After the case was tried, the court entered a memorandum decision and the following findings of fact and conclusions of law:

### FINDINGS OF FACT

. . . .

4. That the defendant Bonneville Development Corporation d/b/a Ramada Inn, Evanston, Wyoming, executed and delivered to the plaintiff ... leases on or about the dates indicated....

5. That on or about the dates of the execution of each of the five leases, each of the individual defendants, Hansen, Gordon, and Nelson, executed a continuing and unconditional guaranty agreement whereby they agreed to perform, pay, and discharge all of the defendant Bonneville Development Corporation's obligations under the respective lease agreements.

6. At the time when guaranty agreements were presented with each of the above five leases, the guaranty agreements were not dated and were not identified by lease number.

. . . .

8. That the last payment made by the defendants under any of the lease contracts was on May 13, 1982.

9. Plaintiff attempted to force payments during the summer of 1982, but did not repossess the collateral.

. . . .

12. That on or about March 30, 1984, letters were sent to the defendants ... informing them of the date after which the personal property, which was the subject matter of the leases, would be sold at private or public sale.

13. The personal property was sold to Commercial Security Bank and First Security Bank during the month of September, 1984 at a private sale for the amount of Eighty–Five Thousand Dollars ($85,000).

14. Expert witness testimony placed the value of the personal property at fifteen to twenty-five percent of the original purchase value. The actual amount received was approximately eighteen percent (18%) of its original value.

. . . .

16. As a part of plaintiff's bargain, it had established residual or salvage value in the equipment of Twenty–Three Thousand Eight Hundred Five Dollars and Sixty–Five Cents ($23,805.63 [sic]).

17. At the time of the sale of the personal property, a wood carving was retained by the plaintiff and not sold with the other personal property.

. . . .

20. The defendant Bonneville Development Corporation agreed, pursuant to the lease agreements, to pay any reasonable attorney fees.

21. Plaintiff's counsel has submitted an affidavit in support of attorney's fees with their affidavit incorporating actual time and charges made in this matter.

22. All of the parties agreed that the leases were, in fact, financing agreements that were subject to the Uniform Commercial Code.[1]

From the foregoing findings of fact, the Court now enters its:

## CONCLUSIONS OF LAW

1. That the guaranties of the individual defendants ... were intended by the parties to guarantee the leases entered into by Bonneville Corporation and are legally binding contracts. Although these documents may have been blank as to lease number, date, and even the equipment covered, defendants knew or should have known that the documents were intended for the five leases at issue.

2. That the sale of the collateral was commercially reasonable and conformed to the requirements of the Uniform Commercial Code. The sale was a private sale, after notice was given to the individual defendants, and the price obtained was commercially reasonable.

3. The court finds that the sale of the wood carving was not commercially reasonable and allows an offset of Ten Thousand Dollars ($10,000) for the price of this carving.

. . . .

5. The Court finds that the damages should be computed as follows:

. . . .

b. The plaintiff should be awarded the residual value of the equipment in the amount of Twenty–Three Thousand Eight Hundred Five Dollars and Sixty–Five Cents ($23,805.65).

. . . .

The total amount of damages suffered by the plaintiff is Eight Hundred Thirty–Eight Thousand Six Hundred Twenty–Three Dollars and Twenty–Two Cents ($838,623.22).

6. Defendants should be awarded an offset against these damages in the amount of Ten Thousand Dollars ($10,000). . . .

7. The total amount of damages awarded to the plaintiff should be Eight Hundred Twenty–Two Thousand Six Hundred Twenty–Three Dollars and Twenty–Two Cents ($822,623.22).

8. In addition to the foregoing, plaintiff should be awarded its attorney's fees in the amount of Thirteen Thousand Four

---

1. *See generally Colonial Leasing Co. v. Larsen Bros. Constr.,* 731 P.2d 483, 487–88 (Utah 1986); *Centurian Corp. v. Cripps,* 624 P.2d 706, 709–10 (Utah 1981) (tests for determining whether lease is subject to secured transaction provisions of commercial code); Utah Code Ann. §§ 70A–1–201(37), 70A–9–102(2) (1980).

Hundred and Eighty–Five Dollars ($13,-485.00).

Judgment was entered accordingly, and defendants appealed.

## II

■ Defendants' first point on appeal is that IFG's disposition of collateral in this case was commercially unreasonable and therefore in violation of Utah Code Ann. § 70A–9–504(3) (1980) and its Wyoming counterpart, Wyoming Statutes § 34–21–963(c) (1983).[2] The Wyoming statute is virtually identical to section 70A–9–504, which in pertinent part provides:

(1) A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.

. . . .

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

Specifically, defendants claim that the lack of commercial reasonableness is demonstrated by the fact that IFG failed to maximize the value of the collateral. We disagree.

This Court has previously stated:

[W]hether any particular sale is commercially reasonable is to be determined on a case-by-case basis. That determination depends on whether the circumstances of the sale and the manner and business context in which it occurred support a

conclusion that the sale was conducted in a commercially reasonable manner.[3]

In the instant case, the record supports the trial court's determination that the method, manner, time and place of the sale was in compliance with the requirements of the Uniform Commercial Code. Although defendants complain that IFG did not proceed in an expeditious manner to repossess and sell the collateral, given the evidence as presented, together with the particular nature and location of the equipment and the intervening receivership/bankruptcy involved, the longer-than-usual delay in this case was reasonable.

■ Moreover, inasmuch as the expert appraiser testified that the equipment should bring between 15 percent and 25 percent of its original value, the 18 percent sale price was within a reasonable range. This determination is further supported by the fact that defendants offered no evidence indicating how the sale price did not reflect the property's fair market value or how they were substantially damaged by the sale.[4] Also, defendants received notice of the sale and neither purchased the collateral for a higher value nor found other purchasers to do the same. Accordingly, the record amply supports the conclusion that the disposition of the collateral was commercially reasonable; thus defendants' first point on appeal is without merit.

## III

Defendants next contend that the trial court erroneously awarded a deficiency judgment once it had concluded that the disposition of a portion of the collateral (a wood carving) was commercially unreasonable. However, we do not reach the merits of defendants' claim since the trial court erred in stating its conclusion regarding the collateral.[5]

---

**2.** The lease guarantee forms provided that questions of law should at least in part be decided in accordance with the laws of Wyoming. However, given the disposition of this case, we do not focus upon any distinctions between Utah and Wyoming law.

**3.** *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070–71 (Utah 1985); *see Security State Bank v. Broadhead*, 734 P.2d 469, 472 (Utah 1987); *Haggis Management, Inc. v. Turtle Management*, 745

P.2d 442, 444 (Utah 1985); *Pioneer Dodge Center, Inc. v. Glaubensklee*, 649 P.2d 28, 29–31 (Utah 1982).

**4.** *See Scharf*, 700 P.2d at 1071–72.

**5.** *See Acton v. Deliran*, 737 P.2d 996, 999 n. 4 (Utah 1987) ("This Court may decide a case upon a proper ground even though not argued by the parties."); *cf. Hiltsley v. Ryder*, 738 P.2d 1024, 1025 (Utah 1987) (appellate courts' ability

As we have repeatedly noted, conclusions of law are accorded no particular deference on appeal, but instead are reviewed simply for correctness.[6] In this case, the trial court declared in its findings of fact: "At the time of the sale of the personal property, a wood carving was retained by the plaintiff and *not sold* with the other personal property" (emphasis added). In contrast, however, the court stated in its conclusions of law: "The Court finds that the *sale* of the wood carving was not commercially reasonable and allows an offset of Ten Thousand Dollars ($10,000.00) for the price of this carving" (emphasis added). As explained below, the court's conclusion was erroneously stated and is not supported by the record.

Initially, determination of this issue on appeal not only requires consideration of the remedies afforded a secured party upon a debtor's default of a security agreement, but also necessitates analysis of several related sections of the Uniform Commercial Code ("UCC").[7] In *Eggeman v. Western National Bank*,[8] the Wyoming Supreme Court discussed five principal remedies offered a secured party when a debtor defaults on a security agreement: (1) use of real estate mortgage foreclosure procedures if the security agreement involves coverage for both real and personal property;[9] (2) collection of outstanding accounts receivable from those obligated therefor;[10] (3) utilization of "special remedies" provided for in the security agreement;[11] (4) procurement of a judgment on the underlying obligation and collection thereunder;[12] and (5) possession of the collateral without judicial process and disposal or acceptance of the same in satisfaction of debt.[13] The fifth remedy described relates to UCC sections 9–504 and 9–505 and appears to be the only one relevant to or contemplated by the parties in this case.

■ With that in mind, we note that article 9 of the UCC generally seeks to establish a framework allocating rights and remedies between the parties to a security agreement aimed at effecting a balanced approach based in part upon the related standards of commercial reasonableness,[14] good faith,[15] and reasonable care.[16] Under

to raise issues sua sponte). Inasmuch as the issue is not relevant to the outcome of this case, we do not address the contention that a commercially unreasonable disposition of a portion of secured collateral should not bar a deficiency judgment in Utah or Wyoming.

**6.** *Oates v. Chavez,* 749 P.2d 658, 659 (Utah 1988); *Scharf,* 700 P.2d at 1070; *Betenson v. Call Auto & Equip. Sales, Inc.,* 645 P.2d 684, 686 (Utah 1982).

**7.** All references to the Uniform Commercial Code may be found in title 70A of Utah Code Ann. (1980).

**8.** 596 P.2d 318 (Wyo.1979).

**9.** *Eggeman,* 596 P.2d at 321; Utah Code Ann. § 70A–9–501(4) (1980).

**10.** *Eggeman,* 596 P.2d at 322; Utah Code Ann. § 70A–9–502(1) (1980).

**11.** *Eggeman,* 596 P.2d at 322; Utah Code Ann. § 70A–9–501(2) (1980).

**12.** In *Eggeman,* 596 P.2d at 322, the Wyoming Supreme Court stated:
The procedure for this remedy is not set out in the Uniform Commercial Code.... Usually the judgment is executed on by issuance of a writ of execution. The sheriff levies the writ upon the goods and chattels of the debtor, taking them actually or constructively into his possession. The various items levied upon are then identified and are subject to valuation and inspection. If necessary, the sheriff then holds an execution sale. Such procedure is anticipated by the Uniform Commercial Code.
(Footnote omitted); *see* Utah Code Ann. § 70A–9–501(1), (5) (1980); *see also* White & Summers, *Uniform Commercial Code* § 26–4, at 1090–94 (2d ed.1980).

**13.** *Eggeman,* 596 P.2d at 322; Utah Code Ann. §§ 70A–9–504, –505(2) (1980).

**14.** Utah Code Ann. §§ 70A–9–502(2), –504 (1980); *First Nat'l Bank of Thomasboro v. Lachenmyer,* 131 Ill.App.3d 914, 922, 87 Ill.Dec. 53, 59, 476 N.E.2d 755, 761 (1985), *modified on other grounds,* 146 Ill.App.3d 1035, 100 Ill.Dec. 666, 497 N.E.2d 844 (1986).

**15.** *See* Utah Code Ann. § 70A–1–203 (1980); UCC § 9–507 official comment (quoted in 9 *Anderson on the Uniform Commercial Code* § 9–507:1, at 823 (3d ed. 1985)); *In re Emergency Beacon Corp.,* 48 B.R. 341, 349 (Bankr.S.D.N.Y.1985). "Good faith" is defined in Utah Code Ann. § 70A–1–201(19) (1980) as "honesty in fact in the conduct or transaction concerned."

**16.** *See* Utah Code Ann. § 70A–9–207(1) (1980); *cf.* Utah Code Ann. § 70A–4–103 (1980) (action

section 503 of that article, a secured party has the right upon default to take possession of defaulted collateral.[17] Then, section 9–504 allows the creditor to choose the manner of disposition of the collateral it deems to be the most advantageous. It may dispose of the same by public or private proceedings, in bulk or by lots, and at any time, place or terms appropriate—subject to the limitation that the disposition must be commercially reasonable. Thereafter, the creditor must account for a surplus and may sue for a deficiency.[18]

Section 9–505, on the other hand, allows a creditor to retain collateral in satisfaction of indebtedness.[19] If a creditor uses this alternative approach, it must notify the debtor in writing of its intent to do so. Subsequently, if the debtor (or other party entitled to notice under the statute) does not object within the time allowed, no other action is required. However, if there is an objection, the collateral must be disposed of pursuant to section 9–504.[20] Applicable consequences and remedies for failure to comply with such provisions are outlined in the code.[21] Importantly, section 9–501(3) does not allow these requirements in sections 9–504 and 9–505 to be varied or waived.[22] The initial issue here is whether the wood carving was disposed of according to section 9–504 or retained under section 9–505 in satisfaction of debt.

### A

■ As noted, section 9–504 allows a secured party after default to "sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." In deciding cases with issues comparable to those in the instant one, courts have discussed the meaning of the "obscure language" in section 9–504(1) permitting a secured party to "otherwise dispose of" collateral in the alternative to a disposition by sale or lease. In determining that disposition of collateral requires affirmative action by the secured party, courts have held:

> Whatever import the modifying language "or otherwise dispose of" is intended to have, we conclude that the mere retention of collateral is not the type of disposition which this provision contemplates. A contrary conclusion would obliterate the distinction which the Code draws between the consequences of a secured party's retaining and disposing of collateral. It would permit a secured party to dispose of collateral under § 9–504 by retaining it and in addition, to claim a deficiency. To sanction this course of conduct as "commercially reasonable" would contravene the Code's mandate that an effective election to retain the collateral results in a complete discharge of the underlying obligation.[23]

---

constituting ordinary care in bank deposits and collections chapter).

**17.** Utah Code Ann. § 70A–9–503 (1980); *Emergency Beacon Corp.,* 48 B.R. at 348.

**18.** *See* Utah Code Ann. § 70A–9–504 (1980); *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 771 (Tex.1982); *In re Copeland,* 531 F.2d 1195, 1206 (3d Cir.1976).

**19.** Utah Code Ann. § 70A–9–505 (1980). Given the disposition of this case, we do not address the issue of whether the retention of a portion of collateral only satisfies that portion of the debt secured thereby. *But cf. Blackhawk Prod. Credit Ass'n v. Meridan Implement Co.,* 82 Ill. App.3d 93, 95–96, 37 Ill.Dec. 387, 389, 402 N.E.2d 277, 279 (1980) (under UCC § 9–505(2), a "secured party may retain collateral *only* in discharge of the debt secured thereby") (empha-

sis in original); *United States v. Excellair, Inc.,* 637 F.Supp. 1377, 1383 (D.Colo.1986) (government partially disposed of collateral and retained the remainder).

**20.** Utah Code Ann. § 70A–9–504 (1980); *Tanenbaum,* 628 S.W.2d at 771; *Copeland,* 531 F.2d at 1206.

**21.** *See generally* Utah Code Ann. §§ 70A–9–207, –501, –507 (1980); *infra* note 34.

**22.** Utah Code Ann. § 70A–9–501 (1980).

**23.** *Copeland,* 531 F.2d at 1207 (citations omitted); *see also, e.g., Lachenmyer,* 131 Ill.App.3d at 921, 87 Ill.Dec. at 58–59, 476 N.E.2d at 760–61 (citing *Mechanics Nat'l Bank v. Gaucher,* 7 Mass. App. 143, 386 N.E.2d 1052 (1979); *Cordova v. Lee Galles Oldsmobile, Inc.,* 100 N.M. 204, 668 P.2d 320 (N.M.Ct.App.1983)).

Simply stated, a retention of the collateral is not a disposition under section 9–504.

At trial in this case, the exhibits evidenced, and a senior adjustor for IFG testified, that while most of the collateral had been sold or otherwise disposed of pursuant to statute, IFG, as the owner of the wood carving, had not sold, leased, or otherwise disposed of it but, rather, had "repossessed" it, assessed its value, and acknowledged that such amount could properly be applied as a setoff to what defendants owed. The record demonstrates that as of the date of trial, IFG had not actually credited or subtracted that sum from the total amount of the leases or the deficiency judgment being sought but, instead, merely noted the same for the court's direction. Additionally, defendants had not compelled disposition of the collateral.

■ Accordingly, since the evidence would not support a determination that a disposition had occurred, the trial court properly found that the carving was not sold, leased, or "otherwise disposed of" as was the rest of the collateral. After determining such, the court could not correctly and conformably conclude that the carving was unreasonably sold or "otherwise disposed of" pursuant to section 9–504. Any conclusion indicating the same was incorrectly stated. With this in mind, the issue becomes whether IFG retained the collateral in satisfaction of debt.[24]

### B

■ As previously noted, in contrast to the dispositional remedies provided for in section 9–504, the UCC also entitles creditors to retain and protect collateral held for a debt until such debt is set aside.[25] Significantly, under section 9–505 and applicable case law, such retention cannot be equated under the statute with an election to satisfy debt, absent the statutorily required written notice from the creditor that it has made such an election.[26]

As has been stated:

By its terms [section 9–505(2)] makes the election to retain the collateral in full satisfaction and discharge of the debt optional with the creditor and it provides that the option is to be exercised by written notice to the debtor. There was no communication between the parties to this action, however, which may be construed as an election by the creditor to take the collateral in full satisfaction of the debt, and an election should not be implied when the means for certainty are spelled out in the statute. The concern, of course, is that the creditor, having proceeded without notifying the debtor of his intention, may act to the debtor's disadvantage. But section 9–505 was not designed to protect the debtor from a wrongful sale. If the secured party fails to comply with the provisions of Article 9, the debtor may protect his rights by the remedies available pursuant to section 9–507. He may restrain or compel disposition of the collateral, or if disposition has already occurred, he may charge the creditor with any loss occasioned by its unauthorized conduct. Neither the provisions nor the purposes of the Code require that plaintiff forfeit its entire claim, however....[27]

Acknowledging otherwise would nullify a creditor's right of sale.[28]

---

**24.** Utah Code Ann. § 70A–9–505(2) (1980).

**25.** Utah Code Ann. § 70A–9–207 (1980); *see also supra* notes 14–22 and accompanying text.

**26.** Utah Code Ann. § 70A–9–505 (1980); *Hanam, B.V. v. Kittay,* 589 F.Supp. 1042, 1048 (S.D. N.Y.1984) (citing UCC § 9–505(2); *S.M. Flickinger Co. v. 18 Genesee Corp.,* 71 A.D.2d 382, 385, 423 N.Y.S.2d 73, 76 (1979) ("[A]n election [under section 9–505] should not be implied when the means of certainty are spelled out in the statute.")); *see also Emergency Beacon Corp.,* 48 B.R. at 347, and cases cited therein ("In the absence of a written notice to the debtor expressing an election to accept collateral in full satisfaction of an obligation, none will be implied under U.C.C. § 9–505(2).").

**27.** *S.M. Flickinger Co.,* 71 A.D.2d at 385–86, 423 N.Y.S.2d at 76 (citation omitted); *see also McCullough v. Mobiland, Inc.,* 139 Ga.App. 260, 263–64, 228 S.E.2d 146, 149 (1976) (UCC § 9–505(2) sets forth a permissive, not a mandatory, remedy).

**28.** *American Parts Sys. v. T & T Automotive,* 358 N.W.2d 674, 677 (Minn.Ct.App.1984).

Turning again to the instant case, and notwithstanding the court's summary statement that IFG had merely "retained" the wood carving, it has not been alleged, and there is no reference to or suggestion in the record, that IFG proposed to *retain the carving in satisfaction of indebtedness under section 9–505(2)*. As indicated, section 9–505(2) requires that written notice be given to the debtor of the creditor's proposal to retain the collateral in satisfaction of debt. However, IFG's letters regarding foreclosure make no reference to an intention to retain the wood carving or any other part of the collateral in lieu of disposing of it by sale or otherwise. Thus, IFG did not fulfill the notice requirement of this section.[29] Similarly, there is no claim that IFG waived the notice requirement or that its actions, absent the required written notice, should be considered as having manifested the intent to retain the collateral, thus discharging debt. In reference to the latter, however, it has been suggested that there are

> at least three different approaches to the issue of whether or not a § 9–505(2) election can be made by a creditor where the creditor has not sent the written proposal to the debtor to retain the collateral in satisfaction of the obligation. One group of courts holds that a § 9–505(2) election can be implied from an unreasonable prolonged retention of collateral. A second line of cases holds that an election under § 9–505(2) is impossible absent the service on the debtor of the statutory proposal to retain. A third position requires proof that the creditor definitely manifested an intent to accept the collateral in satisfaction of the obligation.[30]

Nevertheless, inasmuch as the evidence supports neither an implied nor an express retention,[31] we do not address the various views regarding this issue, except to reiterate that section 9–501 expressly states that the requirement of actual written notice under section 9–505(2) cannot be varied or waived.[32]

Accordingly, while section 9–505(2) provides that the parties may assent to the seller's retaining possession of collateral in satisfaction of debt, the record will not support the determination that such situation occurred here.[33] Thus, although the trial court used the term "retained" in attempting to describe IFG's actions regarding the carving, it did not do so in the sense that section 9–505 provides a method for

**29.** *See Fletcher v. Cobuzzi,* 499 F.Supp. 694, 699 (W.D.Pa.1980) (specific and nonwaivable notice requirements exist under UCC § 9–505); *Stensel v. Stensel,* 63 Ill.App.3d 639, 642, 20 Ill.Dec. 548, 551, 380 N.E.2d 526, 529 (1978) ("Notice is required by the plain meaning of the section [9–505]. . . .").

**30.** *Deephouse Equip. Co. v. Knapp,* 38 B.R. 400, 403–04 (Bankr.D.Conn.1984); *see also Millican v. Turner,* 503 So.2d 289, 291 (Miss.1987) (adopting first view, claiming it to be a majority approach).

**31.** *See generally FDIC v. Tempest Fugat, Inc.,* 75 Or.App. 536, 541–42, 707 P.2d 81, 84–85 (1985).

**32.** Utah Code Ann. § 70A–9–501 (1980); *see generally* 9 Anderson on the Uniform Commercial Code § 9–505:19, at 809–810 (3d ed.1985) [hereinafter Anderson]; *Fletcher,* 499 F.Supp. at 699 (although parties involved in the security agreement may "determine the standards," they cannot waive or vary the notice requirement); *Shultz v. Delaware Trust Co.,* 360 A.2d 576, 579 (Del.Super.Ct.1976) ("[N]otice guarantees may not be waived."); *Chrysler Credit Corp. v. Mitchell,* 94 A.D.2d 971, 971, 464 N.Y.S.2d 96, 97

(1983) (an election to take collateral in satisfaction of debt will not be implied but must be made by written notice); *see also McCullough,* 139 Ga.App. at 263, 228 S.E.2d at 149 (UCC § 9–505(2) sets forth a permissive, not a mandatory, remedy); *cf. Johnson v. Utah State Retirement Office,* 755 P.2d 161, 162 (Utah 1988) (plain, unambiguous language of statute [may not be disregarded and] mandates disposition of case). At least one court has viewed the provisions under section 70A–9–505(2) as a statutory analogue to the common law concept of accord and satisfaction and, in doing so, has noted that a debtor seeking to utilize section 70A–9–505(2)'s protection must establish that the secured party intended to retain the collateral in lieu of selling it for the debtor's debt. *See Nelson v. Armstrong,* 99 Idaho 422, 430, 582 P.2d 1100, 1108 (1978); *see also Security State Bank v. Broadhead,* 734 P.2d 469, 472 (Utah 1987) ("A party seeking to establish an accord and satisfaction bears the burden of proof and must demonstrate the existence of declarations 'of such a clear nature as to assure that the parties are aware of the extent and scope of such agreement.' ").

**33.** *Everett v. Parts, Inc.,* 4 Ark.App. 213, 217, 628 S.W.2d 875, 877 (1982).

collateral to be retained *in satisfaction of debt.*

■ In summary, prior to trial, IFG neither sold the wood carving nor notified the applicable parties that it proposed to retain the same in satisfaction of debt. Therefore, IFG's actions did not cancel or offset debt in the instant case. Neither did the fact that the court allowed the creditor to keep the property have such effect. Defendants' remedy was to seek relief under applicable sections of the code,[34] one provision of which allows debtors to restrain or compel disposition of collateral and charge creditors with any loss occasioned by non-complying conduct.[35] Defendants, however, chose not to pursue such remedies in this case.

Inasmuch as neither a disposition nor a retention occurred under sections 9–504 and 9–505 respectively, further analysis is required of the trial court's resolution below.

### C

■ In addition to the facts noted previously, IFG's senior adjuster testified at trial that although the carving had originally cost $2,000, IFG assessed its value at twice this figure. The court also received into evidence the actual invoice listing the cost of the carving as $2,000. Thereafter, defendant Hansen confirmed the $2,000 sum, adding that Bonneville Development Corp. had offset the artist's overhead. Without offering any supportive evidence regarding either the cost or the value of the collateral, defendant Hansen subsequently surmised that he "felt" the *purchase price* for the wood carving was "close to $10,000." Defendants concluded their case without offering evidence to contradict the plain content of the invoice or without submitting the testimony of an art expert or appraiser to contest IFG's *valuation* of the collateral. In short, while IFG offered evidence of the carving's *value,* defendants merely contested its *cost.* IFG did not subsequently refute this latter figure, and the court did not pursue the real probability that the actual value may be less than the initial cost of this particular artistic endeavor. Thus, given the fact that the only evidence before the court overwhelmingly and without material contradiction sustained the reasonableness of IFG's valuation of the carving, the trial court again had no basis for concluding that the "disposition" of the wood carving was in any way unreasonable.

Instead, the trial court ordered the deficiency judgment to be awarded and offset by the $10,000 amount. In doing so, the court essentially effectuated an agreement between the parties as to the unretained and undisposed-of wood carving. That the parties at least implicitly understood and accepted this means to resolve their differences regarding this unique piece of collateral and that defendants gave their approval to this agreement, are substantiated and supported by the fact that neither party disapproved of or claimed below that the court acted inappropriately regarding this resolution. Indeed, according to the record before us, defendants agreed and appeared satisfied with the court's decision since they chose not to exercise several remedies afforded them under the UCC[36] and because they offered no evidence as to the carving's value and neither claimed below nor now contend on appeal that the $10,000 amount implicitly agreed upon and afforded them as such was unreasonable or that the trial court erred in so finding.

Additionally, defendants chose not to claim below the point they now raise on appeal, namely, that the trial court erred in

---

**34.** *See, e.g., supra* note 21; *see also* Anderson, *supra* note 32, § 9–505:6, at 802 (debtor may recover for conversion or hold creditor liable under section 9–507(1) for failure to comply with the code); *Lachenmyer,* 131 Ill.App.3d at 925, 87 Ill.Dec. at 61, 476 N.E.2d at 763 (claim cognizable under section 9–207 to be judged by standard of reasonable care in the custody and preservation of collateral of the same type).

**35.** *See* Utah Code Ann. § 70A–9–507 (1980); *S.M. Flickinger,* 71 A.D.2d at 385, 423 N.Y.S.2d at 76.

**36.** *See supra* notes 21 & 34 and accompanying text.

awarding a deficiency judgment at the conclusion of this case. As we stated in *Franklin Financial v. New Empire Development Co.:*[37]

> For a question to be considered on appeal, the record must clearly show that it was timely presented to the trial court in a manner sufficient to obtain a ruling thereon; we cannot merely assume that it was properly raised. The burden is on the parties to make certain that the record they compile will adequately preserve their arguments for review in the event of an appeal.[38]

Importantly, in affording the trial court a fair opportunity to clarify its judgment and avoid possible error, "the grounds for any objection must be distinctly and specifically stated."[39] The fact that defendants did not specifically contest the appropriateness of the court's judgment below further supports the determination that they understood and agreed with its resolution of the case.

Inasmuch as the above considerations, while not supporting the trial court's inaccurate statement of reasons for its ruling, sustain the appropriateness of its resolution and distribution below, we affirm this point on appeal, albeit on other grounds noted. In doing so, we do not address other issues that have not been raised in this area of the law.

## IV

■ Next, defendants contend that the trial court erred in determining that they guaranteed the leases in question, inasmuch as the personal guarantees at issue were erroneously admitted upon inadequate foundation. Specifically, defendants claim that since the guarantees were al-

tered by adding the date and the lease number after the execution of the leases, IFG failed to carry its burden of proof for admission of the guarantees into evidence. We disagree.

Defendants' contentions appear predicated on our acceptance of their version of the testimony offered and how the trial court should have viewed the circumstances as they existed. However, the facts defendants advance in support of their claims were chosen to the exclusion of other evidence that supports the lower court's decision.[40] In this regard, the trial court in its memorandum decision noted:

> The defendants claim that they executed these guarantee forms in blank, and that they were never intended by them to guarantee the leases at issue in this litigation.
>
> . . . .
>
> ... The Court is persuaded that the guarantees were presented to the defendants in connection with each lease transaction. Although these documents may have been blank as to lease number, date, and even the equipment covered, the defendants either knew or should have known that the documents were intended for the five leases at issue in this litigation. *The defendants at the time they executed these guarantees had no other business with the plaintiff, and thus could only have considered that the guarantees were for leases for the Ramada Inn.* Furthermore, the Court is persuaded that *several of the leases were actually hand delivered to the defendants at the time they were delivered the leases in question, and that the plaintiff's agent observed the signing of the guarantees in*

**37.** 659 P.2d 1040 (Utah 1983).

**38.** *Id.* at 1045 (citations omitted); *see also Zions First Nat'l Bank v. National Am. Title Ins.,* 749 P.2d 651, 657 (Utah 1988); *Killian v. Oberhansly,* 743 P.2d 1200, 1201–02 (Utah 1987); *Mascaro v. Davis,* 741 P.2d 938, 944 (Utah 1987); *Rogers v. M.O. Bitner Co.,* 738 P.2d 1029, 1035 (Utah 1987); *Lane v. Messer,* 731 P.2d 488, 491 (Utah 1986); *Turtle Management, Inc. v. Haggis Management, Inc.,* 645 P.2d 667, 672 (Utah 1982).

**39.** *Hansen v. Stewart,* 761 P.2d 14, 16 (Utah 1988) (citing *Beehive Medical Elec. v. Square D Co.,* 669 P.2d 859, 860 (Utah 1983)).

**40.** *See Ashton v. Ashton,* 733 P.2d 147, 150 (Utah 1987) ("An appellant must marshal all of the evidence in support of the trial court's findings. Only then can we consider whether those findings are 'clearly erroneous.' ").

*connection with the signing of the leases.* The remaining leases were mailed by cover letter, indicating that they would be required for the funding of the leases. The Court does not find it fatal that the guarantees were not dated the same date as the corresponding leases, as it was the defendants who failed to date the documents when signed. Furthermore, the Court is persuaded by the circumstantial evidence that plaintiff communicated to the defendants that in order for the plaintiff to obtain funding for their corporation's project, they must personally guarantee the leases.

(Emphasis added.) Due to the trial court's advantaged position, the presumptions favor its judgment.[41] Where there is dispute and disagreement in the evidence, we assume that the trial court believed those aspects and fairly drew the inferences to be derived therefrom which gave its decision support.[42] To this end, the trial court did not find credible the evidence and testimony defendants presented. Instead, the court viewed the evidence as sustaining the determination that the guarantees were legally binding contracts admitted upon appropriate foundation and supporting the conclusion regarding the deficiency judgment in question. Upon review of the record and the facts of this case, these determinations do not merit reversal.

## V

■ Defendants also contend that the trial court erred in granting judgment for the residual value of the subject property. As noted above, the trial court stated: "As a part of plaintiff's bargain, it had established residual or salvage value in the equipment of Twenty–Three Thousand Eight Hundred Five Dollars and Sixty–Five Cents ($23,805.63 [sic])." At trial, evidence was submitted regarding a stipulation entered into between the parties involving the residual value of the equipment leased:

[Plaintiff's counsel]: Your honor, there are two stipulations that counsel has agreed to in chambers with your honor. The first one is that they have agreed that as a part of the lease documentation and *benefit of IFG's bargain* was that the equipment had a residual value, or the value at the end of the lease, of at least five percent. I think that's incorporated in defendants' exhibit 48 or 49. And so that amount total for all three leases is $23,805.65.

[Defendants' counsel]: That is what five percent is supposed to represent?

[Plaintiff's counsel]: Yeah, five percent of the equipment cost, original equipment cost.

[Defendants' counsel]: I won't stipulate to the amount, but I will stipulate to the five percent that we agreed on.

[Trial court]: Why don't you get together at a break and do the math so there is no question about that amount.

(Emphasis added.) Defendants have not cited any reference in the record wherein testimony was offered evidencing that defendants did not in fact stipulate or agree to pay IFG, as the benefit of its bargain, an amount representing the residual value of the equipment. Indeed, defendants failed to indicate as a part of the above stipulation that their agreement did not establish liability but was somehow limited to only an acknowledgment that the equipment possessed residual value. Inasmuch as the record supports the trial court's determination that defendants stipulated to and should thus be awarded the residual value of the property, this claim on appeal is without merit.

## VI

Finally, defendants contend that the trial court erred in awarding attorney fees to IFG. At trial, IFG's counsel proffered the following:

I would proffer that I'm an attorney of the Utah State Bar and that our office has an across-the-board billing rate of $75.00 per hour whether it is a senior attorney or first [year] associate out of school, that we have spent significant

---

**41.** *Redevelopment Agency of Salt Lake City v. Tanner,* 740 P.2d 1296, 1301–02 (Utah 1987).

**42.** *Id.*

time not only in preparation for this trial but also in the various motions that were heard before on the default judgment and memorandum that we've submitted in regards to that. We feel a reasonable attorney's fee in the prosecution of this case is $10,000.00.

In response, the trial court indicated:

Just for the benefit of counsel, this Court, if, in fact, it ends up awarding a judgment for attorney's fees, feels that pursuant to our local rules that *that would not be sufficient* and will ask, if you could, get accounting sheets and simply attach it to an affidavit. But there's no reason for you to testify in court as to that if it's acceptable to counsel.

[Defendants' counsel]: That's acceptable.

(Emphasis added.) After the trial court found that IFG's proffer was insufficient for the determination of attorney fees, IFG's counsel produced accounting sheets and an affidavit evidencing that the actual fees were $13,485.50. Thereafter, the trial court entered judgment for attorney fees in that amount. Defendants now claim on appeal that IFG should be bound by the original $10,000 figure which counsel unsuccessfully attempted to proffer at trial.

However, inasmuch as the trial court determined that IFG's proffer was insufficient for the determination of attorney fees and since defendants have not claimed or shown that the attorney fees awarded were excessive or lacked an evidentiary basis, we find meritless defendants' contention that IFG should be bound by what was determined to be an inadequate proffer at trial.

We have reviewed defendants' other claims on appeal and find them to be without merit. The judgment of the trial court is affirmed.

STEWART, DURHAM and ZIMMERMAN, JJ. concur.

HOWE, Associate C.J., does not participate herein.