**Gwendolyn MINTON, Respondent,**

v.

**Willford H. HILL, Jr., d/b/a, Cash For Less Used Cars, Appellant.**

**No. WD 52219.**

Missouri Court of Appeals, Western District.

Submitted Sept. 24, 1996.

Decided April 8, 1997.

---

Charles A. Kellogg, Independence, for appellant.

Ann C. Wilson, Kansas City, for respondent.

Before HANNA, P.J., and SMART and LAURA DENVIR STITH, JJ.

SMART, Judge.

This case involves the issue of the proper civil remedy for a purported buyer of a used car who fails to receive the title to the car, and then loses the use of the car when the dealer removes the car.

Gwendolyn Minton, needing to purchase a car, visited a dealership operating under the candid name of "Cash for Less Used Cars." Ms. Minton purchased a vehicle, paying most, but not all, of the purchase price in cash. The dealer retained the title. When she did not pay the balance, the dealer towed her car back to his lot. Ms. Minton sued the owner of the dealership, and obtained a judgment for $2,800.00 in actual damages and $10,000.00 in punitive damages.

Willford Hill, the dealer, appeals, claiming that the trial court erred in ruling in favor of Minton in that Minton lacked an ownership or possessory interest in the automobile in question. We agree that Minton did not have the requisite interest to maintain an action for conversion. We also agree that Minton may not maintain an action under the statutory provisions she has invoked. We vacate the judgment and remand the case.

## FACTS

On June 30, 1994, Minton purchased a 1985 Nissan Maxima from Hill, who was operating a used car lot at 75th and Prospect in Kansas City. Minton paid Hill $2,500.00 in cash and agreed to pay an additional $300.00 later. The parties did not set a deadline for the payment of the final $300.00. It was agreed that Hill could retain title to the automobile until Minton paid him the outstanding $300.00, at which time he would deliver the title to her. A couple of weeks later, Minton contacted Hill about renegotiating the $300.00 final payment in view of some mechanical difficulties she was having with the car. Hill declined to renegotiate. Approximately two months after the sale, Minton still had not paid the additional $300.00. Hill took the car. He did not give Minton notice that she was in default, nor did he at any time offer to return any money that she had already paid to him for the car.

Minton contacted Hill, offering to pay the $300.00. He refused to release the car. Hill claimed that Minton owed him $1,800.00 for tow charges. When Minton went to the car lot a short time later, she found the lot abandoned. All cars had been removed from the premises. No money was ever refunded to Minton.

On November 14, 1994, Minton filed an action against Hill in Associate Circuit Court. She sought damages, not recovery of the automobile. Count I alleged conversion. Count II stated a claim for a violation of

§ 408.555, RSMo 1994[1] (dealing with a debtor's rights in secured transactions). Count III stated a claim for a violation of § 400.9-504(3) (dealing with a secured party's right to dispose of collateral after default). A fourth count, added later, alleged a violation of § 407.020 (dealing with unlawful merchandising practices). A hearing on the matter was held December 19, 1995. Hill appeared by counsel, but presented no evidence. The trial court entered judgment against Hill, awarding Minton actual damages of $2,800.00 and punitive damages of $10,000.00. The trial court did not specify whether he was finding in favor of Minton on all counts or less than all. Hill appeals.

### STANDARD OF REVIEW

 This court will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where, as in this case, the trial court has not made any specific findings of fact, all fact issues will be found to be in accord with the decision of the trial court, *Westinghouse Elec. Co. v. Vann Realty Co.*, 568 S.W.2d 777, 780 (Mo. banc 1978), and the judgment will be affirmed under any reasonable theory supported by the evidence. *Berry v. Director of Revenue*, 885 S.W.2d 326, 328 (Mo. banc 1994). A bench tried judgment which reaches the correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment. *Graue v. Missouri Property Ins. Placement Facility*, 847 S.W.2d 779, 782 (Mo. banc 1993).

### CONVERSION

 Conversion can be proved in one of three ways: (1) by a tortious taking; (2) by the use or appropriation to the use of the person in possession indicating a claim in opposition to the rights of the owner; and (3) by the refusal to give up possession on demand. *Centerre Bank Nat. Ass'n v. Missouri Farmers Ass'n*, 716 S.W.2d 336, 341 (Mo.App.1986). The law of conversion is concerned with the right to possession. *American Civil Liberties Union v. Miller*, 803 S.W.2d 592, 595 (Mo. banc), *cert. denied*, 500 U.S. 943, 111 S.Ct. 2239, 114 L.Ed.2d 481 (1991). In order to recover under a theory of conversion, a plaintiff must show that at the time of the alleged conversion he was the owner of or had the right to possession of the property that was converted. *Osborn v. Chandeysson Electric Co.*, 248 S.W.2d 657, 663 (Mo.1952).

### USED CAR TRANSACTIONS

 Hill contends that Minton may not maintain an action for conversion and for the statutory claims because she lacked an ownership interest or possessory interest in the automobile that is the subject of this suit. Hill maintains that under § 301.210, and cases interpreting that section, it has long been the law in Missouri that a purported sale of an automobile without a relatively contemporaneous transfer of title is fraudulent and void, and the "purchaser" obtains no right of ownership or right to possession. Hill is correct. This court recently stated, in a case involving a claim of conversion in a similar set of facts:

> Because a used car buyer who has not been given a certificate of title has neither ownership nor possession rights to the vehicle, such a buyer lacks the rights to the property necessary to maintain an action for conversion. The buyer must seek another remedy if the seller retains the vehicle.

*Okello v. Beebe*, 930 S.W.2d 40, 43 (Mo.App. 1996). Conversion is defined as "the wrongful exercise of dominion or ownership over personal property which interferes with another's right of possession." *Auto Alarm Supply Corp. v. Lou Fusz Motor Co.*, 918 S.W.2d 390, 392 (Mo.App.1996). Section 301.210 governs the issue of whether the buyer of a used car acquires ownership or a right to possession of the vehicle. Section 301.210.4 provides:

> It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this

---

1. All statutory references are to Revised Statutes of Missouri 1994, unless otherwise indicated.

state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

This section is strictly enforced. In *State v. Glenn*, 423 S.W.2d 770, 774 (Mo.1968), the court states:

Section 301.210 is a special statute, a police regulation "of the highest type" with which "absolute technical compliance" is required, the provisions of which are "rigidly enforced" and as to which there are "no exceptions to conform to intentions." *Allstate Ins. Co. v. Hartford Acc. & Indemnity Co.*, Mo.App., 311 S.W.2d 41, 46, fn. 4. The statute is "drastic, mandatory, and intended as a police regulation in the interest of the public welfare to prevent traffic in stolen automobiles," *Robertson v. Snider*, Mo.App., 63 S.W.2d 508, 509, *quoted with approval in Commercial Credit Corp. v. Blau*, Mo. Sup., 393 S.W.2d 558, 563; "to aid in the apprehension of criminals, and to protect the innocent and guileless from the machinations and wiles of the wicked." *Evens v. Home Ins. Co. of New York*, 231 Mo.App. 932, 82 S.W.2d 111, 116[2].

■ A sale that is contrary to the statute is deemed to be fraudulent and void. *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 25 (Mo. 1969). Moreover, the buyer of a used automobile who has not received a certificate of title acquires neither ownership nor the right to possession of the motor vehicle. *Id.* at 26; *Shaffer v. Federated Mut. Ins. Co.*, 903 S.W.2d 600, 605 (Mo.App.1995). Minton did not acquire title to the vehicle. She had no right of ownership or right to possession of the vehicle.

Minton relies upon *Strebler v. Hampton Metro Bank*, 686 S.W.2d 28, 30 (Mo.App. 1984), in support of her contention that the agreement between the parties and not the sale of the automobile entitled her to possession of the vehicle. *Strebler*, however, involves the enforcement of an agreement to purchase as against a third party. The cause of action in *Strebler* did not rely upon the present possession of the title; standing was conferred from contractual rights which were acknowledged by the seller. *Id. Strebler* does not aid Minton. *See Okello*, 930 S.W.2d 43 n. 3. Hill's actions were inconsistent with his consent to Minton's possession of the vehicle.

## STATUTORY PROVISIONS

■ Minton's petition also raised claims under §§ 408.555–.562, et seq., §§ 407.020–.300, and § 400.9–504(3). Minton relies upon § 407.020–.300 to support her claim against Hill. Section 407.025(1) states, in pertinent part:

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action ... to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees....

The sale or purchase of a motor vehicle is governed by § 301.210. *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 676–77 (Mo. App.1984). In *Jackson*, the plaintiff brought suit against an automobile dealer to recover under the Unlawful Merchandising Act, § 407.010, et seq. Plaintiff had discussed purchasing an automobile from the defendant for a price of $5,490.00 with a trade-in as down payment. *Id.* at 676. A contract was signed by both parties. Plaintiff put no money down, and gave the salesman only an unsigned title to her trade-in. The automobile that plaintiff had agreed to purchase was sold to someone else. The court in *Jackson* held that plaintiff had no cause of action under § 407.025. The court reasoned that plaintiff did not obtain any interest in the automobile by signing the contract because no title was delivered and without delivery of title, no ownership was acquired. *Id.* at 677. Also, she gave no consideration because the title she delivered was not signed. There-

fore, plaintiff did not have a cause of action under § 407.025 because, "[b]y the language of § 407.025, the legislature provided a cause of action for one who purchases, not one who attempts or offers to purchase." *Id.* It seems that *Jackson* governs this case even though here Ms. Minton did deliver $2,500 in cash, because the focus of the opinion is on the failure to purchase, not on the lack of the consideration paid by the plaintiff. Ms. Minton fails to distinguish *Jackson* to our satisfaction, and fails to show it is necessarily wrong. Therefore, we are not persuaded that Minton has a cause of action under § 407.025. Minton also argues that, in any event, the transaction could be considered a "lease" giving her the right to possess the car. We disagree. The transaction was clearly not a lease or intended to be a lease.

■ Sections 408.551 through 408.562 apply "to any credit transaction made pursuant to sections 365.010 to 365.160, RSMo, and sections 408.100 to 408.370." Section 408.551. Section 408.562 provides that any person who suffers any loss of money or property as a result of a violation of 408.100 to 408.561 may bring a civil action for actual and punitive damages for violation of the provisions related to default and repossession. These statutes require that a seller provide a buyer with written notice if the buyer is in default, § 408.554, provide for an opportunity to cure the default, § 408.555, and require notice before a lender sells or otherwise disposes of collateral, § 408.557. The term "credit transaction" in this section means "any retail installment transaction as defined by section 365.020...." Section 408.551. Section 365.020(11) defines a "retail installment transaction" as the "sale of a motor vehicle by a retail seller to a retail buyer on time under a retail installment contract for a time sale price payable in one or more deferred installments." This statute also applies only to the sale of an automobile. In the instant case, there was no sale made. *See Jackson,* 664 S.W.2d at 676–77. In fact, both parties have repudiated the transaction before any sale was made. To enforce the contract under § 408.562 in these circumstances would tend to undermine the purposes of § 301.210, which includes discourag-

ing the sale of vehicles without a relatively contemporaneous transfer of title.

■ Minton's claim under § 400.9–504(3) also must fail. This section deals with a secured party's right to dispose of collateral after a default. Once again, the problem is that the executory contract cannot be enforced without undermining the purposes of § 301.210. The courts have repeatedly refused to undermine this section, as in *Lebcowitz v. Simms,* 300 S.W.2d 827 (Mo.App. 1957), which is discussed in more detail below, where the court refused to allow contract remedies, but allowed a claim for restitution.

### RESTITUTION

■ Ms. Minton is not entirely without a remedy. "A contract for the sale of a motor vehicle registered under Missouri law without assignment and delivery of the certificate of title is unlawful and may be repudiated while the transaction remains executory in that the title documents have not been delivered." *Shaffer,* 903 S.W.2d at 605. Hill retained the $2,500.00 which Minton had previously paid to him. He did not deliver the certificate of title to Minton. Hill declined to accept the remaining $300.00, and refused to relinquish the vehicle unless he was paid an additional $1,800.00. Because Hill held the title, he was able to sell the car to a third party.

■ The repudiation of an executory contract occurs when a party to the contract manifests a positive intention, by word or deed, not to perform. *Warstler v. Cibrian,* 859 S.W.2d 162, 166 (Mo.App.1993). Here, both parties have repudiated the contract: Hill by his actions, and Minton by seeking damages instead of enforcement of the contract.

In *Lebcowitz v. Simms,* 300 S.W.2d 827, 828 (Mo.App.1957), the plaintiff purchased a used vehicle, paying $350.00 in cash and executing a note in the amount of $900.00. The note was purchased by a bank. Plaintiff took the vehicle at the time of the transaction. The dealer said that the certificate of title would be mailed the next day. Plaintiff did not receive the certificate, and he continued

to drive with the dealer's plates. He telephoned the dealer on several occasions, and was told each time that the title was "in the mail." Finally, the plaintiff brought an action for breach of contract, seeking actual and punitive damages as well as cancellation of the note. The *Lebcowitz* court would not allow plaintiff to maintain an action for breach of contract because of § 301.210. The court, however, remanded the case so that plaintiff "may repudiate the contract" and recover the purchase price paid. *Id.* at 830. The court provided plaintiff the opportunity to amend the action since plaintiff "misconceived" the remedy. *Id.* at 831. In this case, unlike *Lebcowitz,* the car has already been "returned" to the dealer. Moreover, the evidence at trial was consistent with the notion that when the dealer, Hill, regained custody of the car, it was in substantially the same condition. Minton had the use of the car only two months. The negotiated price of the car was $2,800.00, yet only $2,500.00 changed hands in the transaction. We may readily assume the car was still, two months later, worth at least $2,500.00. *See Hymer v. Dude Hinton Pontiac, Inc.,* 332 S.W.2d 467 (Mo.App.1960) (where "buyer" held car for nine months before repudiating the transaction, and such nine month period was held to be too long to presume the condition was substantially similar).

Here we could, like the *Lebcowitz* court, remand the case to allow plaintiff to proceed on a theory of restitution. However, here the plaintiff no longer has custody of the car, because the dealer picked it up. Also, the essential elements of a claim for restitution have already been pleaded and proved by Minton. It is not the label of the cause of action, or the prayer for relief, but instead it is the operative facts stated in the petition which determine the nature of the cause of action. *McKinnon v. McKinnon,* 896 S.W.2d 90, 91 (Mo.App.1995). Rather than remand for a new trial, we may, in the interest of judicial economy, remand to the trial court with instruction to enter judgment for plaintiff Minton in the amount of $2,500.00.

We recognize, of course, that the legislature might find some social utility in

applying to car dealers some of the statutory remedies pleaded by Minton, so that actual and punitive damages could be awarded in a proper case. The legislature has provided for criminal penalties for violation of § 301.210, authorizing a term of imprisonment for up to one year and a fine of not more than five hundred dollars. *Section 301.440.* However, the statutory scheme currently provides no civil remedy for Minton. We conclude, somewhat reluctantly, that Minton's only civil remedy is a claim for restitution.

The judgment is reversed, and the case is remanded to the trial court with instructions to enter judgment for plaintiff in the amount of $2,500.00. Each party shall bear its own costs on appeal.

HANNA, P.J., and LAURA DENVIR STITH, J., concur.