**Richard and Lora ANTLE, Appellants,**

v.

**Gary REYNOLDS, Respondent.**

**No. WD 57271.**

Missouri Court of Appeals,
Western District.

Submitted Nov. 3, 1999.

Decided April 18, 2000.

Blaine H. Elliott, Belton, for appellant.

John F. Burns, St. Joseph, for respondent.

Before JAMES M. SMART, Jr., P.J., JOSEPH M. ELLIS and EDWIN H. SMITH, JJ.

JAMES M. SMART, Jr., Judge.

This case involves the recurring issue of what remedies are available to an individual purchasing a motor vehicle from a dealer without an assignment of certificate of title.

In early 1998, Richard and Lora Antle were shopping for a minivan to replace their 1997 Camaro as a family vehicle. In the process, they visited the used car lot owned by Gary Reynolds, doing business as Reynolds & Reynolds. The dealership showed the Antles a 1994 Dodge Caravan. After test driving the vehicle, the Antles negotiated for the purchase of the Caravan. The parties executed a retail installment contract and security agreement, which provided that the defendant dealership agreed to sell, and the Antles agreed to purchase, the Dodge Caravan, with the consideration to be the trade-in of the Antles' 1997 Camaro, subject to the existing loan and a payment of the sum of $13,050. The Antles contend that during these negotiations, the salesperson informed them that they would be required to buy an extended warranty in order to obtain financing for the Caravan. The dealership provided the Antles with a "Guaranty of Title." The Antles retained possession of the Caravan and paid the balance of the purchase price several days later by means of a bank draft.[1] The Antles delivered the Camaro to the dealership, and began making payments on the installment loan.

Some time thereafter, the Antles learned that the dealership had not paid off the loan balance on the Camaro. They also learned that the defendant had not paid for the extended warranty which the Antles understood they were purchasing. Despite their demands, the Antles also did not receive title to the Caravan.

Ultimately, plaintiffs filed a suit for specific performance of the contract. The trial court dismissed the plaintiffs' action, but instructed the Antles to return the Dodge Caravan to defendant, and instructed the defendant to return the Camaro to the Antles. Several weeks later, the de-

---

1. The draft represented the proceeds of a loan obtained by Antles. The loan, however, was obviously not a typical auto loan, because the bank's interest was not secured by a lien on the title.

fendant paid to plaintiffs the sum of $242.62 and paid the principal balance on the loan created by the Antles for the purchase of the Caravan.

The Antles claim that in spite of the actions taken to reverse the transaction, they remained out-of-pocket over $1500.00 in interest and finance charges. The Antles brought an action in the circuit court against Reynolds, pleading claims under the Missouri Merchandising Practices Act, §§ 407.020—.300, under the Federal Truth in Lending Act, and in common law fraud. Defendant Reynolds moved for summary judgment. After consideration of the pleadings, depositions, and affidavits, the trial court granted summary judgment to defendant on all counts. The Antles appeal.

### Standard of Review

On an appeal from summary judgment, the appellate court's review is "essentially *de novo.*" *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The issue of whether summary judgment was properly granted is an issue of law. *Id.* Because the trial court's judgment is based solely on the record submitted and the law, we do not defer to the trial court's judgment in our review. *Id.* We review the record in the light most favorable to the party against whom judgment was entered. *Id.* We examine the record to determine whether there is a dispute as to any material fact, and, if not, whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II School Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994).

### Analysis

The first count pleaded by the Antles was under the Merchandising Practice Act, §§ 407.020—.300. Section 407.020 describes the merchandising practices which are declared unlawful in violation of the Act. Included within the scope of the unlawful practices are the making of false statements and false promises and the use of "unfair" practices. Section 407.025.1 states as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The *court* may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

The trial court granted summary judgment for Defendant Reynolds on the claim under § 407.025 on the basis that § 301.210.4, RSMo 1994, bars the Antles from recovering damages under that section because the transaction in question did not constitute a valid or enforceable "purchase" under the law because no transfer of title occurred contemporaneous with the transaction. Section 301.210.4 states:

> It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

The trial court, in denying the claim under the Merchandising Practice Act, found that the action was barred by the application of § 301.210.4, relying upon the

case of *Minton v. Hill*, 944 S.W.2d 250 (Mo.App.1997). The court also denied relief for similar reasons on the claim for common law fraud, citing *Lebcowitz v. Simms*, 300 S.W.2d 827 (Mo.App.1957). Finding no authority directly on point as to the Truth in Lending Act claim, the court nevertheless believed the same principles required rejection of that claim as well. The appellants contend that the trial court erred in its rulings.

■ The appellants in this case claim that the trial court erred, and they challenge the precedent established by this court in *Minton*. *Minton* dealt in part with an issue presented in Point I here: whether § 301.210.4 forbids a private action for damages under the Missouri Merchandising Practice Act as to a vehicle transfer when there has been no transfer of title between the parties.

In *Minton*, the buyer had agreed to purchase a car from a used car dealer, Hill. The buyer paid most, but not all, of the purchase price and took possession of the vehicle. *Minton*, 944 S.W.2d at 252. The dealer retained the certificate of title. After the parties were unable to resolve a dispute about certain mechanical problems with the car, the dealer repossessed the car. *Id.* The buyer brought an action for conversion, but also contended, *inter alia*, that the dealer had violated § 407.025. *Id.* at 252–53. In *Minton*, we concluded that the law was clear that the buyer whose car was repossessed by the party holding title to the vehicle could not maintain an action for conversion against that party. *Id.* at 254. Noting the long list of authorities holding that under § 301.210, a purported buyer acquires no ownership or possessory rights in a motor vehicle without the relatively contemporaneous transfer of title, we ruled that Minton could not maintain her claim for conversion. *Id.* As to the claim under § 407.025, we held, after considering *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675 (Mo.App.1984), that a transaction which did not include a valid title transfer pursuant to § 301.210.4 was not a purchase within the meaning of § 407.025 and that remedies provided in that statute were not available. *Minton*, 944 S.W.2d at 254, 255.

*Jackson* was an action brought under the Merchandising Practices Act by a prospective car purchaser. *Jackson*, 664 S.W.2d at 676. The plaintiff in that case discussed the purchase of a 1978 Pontiac with a dealer. The parties agreed the plaintiff would trade in her 1972 Chevrolet, and finance the balance of the purchase price. *Id.* The parties signed a contract to that effect. *Id.* The dealer promised to hold the car while plaintiff obtained financing. The plaintiff gave the dealer the unsigned title to her Chevrolet. *Id.* Later, plaintiff learned that the Pontiac had been sold to someone else. Plaintiff purchased a car elsewhere, then sought to bring an action under § 407.025 for the alleged damages in having to buy a different car. *Id.* The court held that the plaintiff could not maintain an action under § 407.025 because, *inter alia*, she had not "purchased" anything and had no ascertainable loss within the meaning of the statute. *Id.* at 677.

In *Minton*, after discussing the facts of *Jackson*, we said:

> It seems that *Jackson* governs this case, even though here Ms. Minton did deliver $2,500 in cash because the focus of the opinion [in *Jackson*] is on the failure to purchase, not on the lack of consideration paid by the plaintiff. Ms. Minton fails to distinguish *Jackson* to our satisfaction, and fails to show it is necessarily wrong. Therefore, we are not persuaded that Minton has a cause of action under section 407.025.

*Minton*, 944 S.W.2d at 255.

In this case, appellants argue in Point I that the trial court erred in granting summary judgment to defendant in reliance on *Minton* because appellants purchased the 1994 Dodge Caravan within the meaning of § 407.025 when they gave valuable consideration for, and accepted delivery of, the

vehicle. The appellants point out that they gave consideration in the form of their equity in their 1997 Camaro, and a bank draft for the balance of the purchase price.

■ The appellants first remind us that, in interpreting statutes, we seek to ascertain the intent of the legislature from the language used, and to give effect to that intent if possible. *See Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). We seek the plain and ordinary meaning of the statutory language, absent statutory definition of that language. *Moon Shadow, Inc. v. Director of Revenue,* 945 S.W.2d 436, 437 (Mo. banc 1997). We are guided by the legislature's apparent purpose in enacting the language in question. *Division of Employment Sec. v. Taney County Dist. R–III,* 922 S.W.2d 391, 393 (Mo. banc 1996).

■ The purpose of the Merchandising Practices Act is to supplement common law fraud remedies in consumer transactions "to preserve fundamental honesty, fair play and right dealings" in such transactions. *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo.App.1973). Appellants point out that § 407.025 is a remedial statute because it introduces new regulation conducive to the public good. *See Hagan v. Dir. of Revenue,* 968 S.W.2d 704, 706 (Mo. banc 1998). Accordingly, they say, the statute should be construed liberally to include those cases which are written within the scope of the transaction aimed at by the legislation. *See State ex rel. Ford v. Wenskay,* 824 S.W.2d 99, 100 (Mo.App.1992). Appellants argue that taking the word "purchase" at its plain and ordinary meaning, and giving it a reasonably broad meaning in light of the statutory purposes, they purchased the Dodge Caravan.

The appellants argue that § 301.210 does not vitiate their purchase of the vehicle within the meaning of § 407.025. Appellants point out that to construe the two statutory sections together in such a way as to deny that an automobile was purchased is "exactly the unjust and unreasonable result that statutory construction counsels against." Appellants say the proper course is to construe the statutes in such a fashion as to give effect to both statutes. As already mentioned, § 301.210.4 provides that it is unlawful for any person "to buy or sell ... any motor vehicle ..." without the necessary assignment of title, and that any such sale "shall be fraudulent and void."

■ Appellants point out that § 301.210.4 does not deny that a purchase or sale can take place with regard to a car without the assignment of title. Rather, the statute simply declares such transactions legally fraudulent and void. The statute describes the transactions at which it aims as transactions involving the buying or selling of a motor vehicle without the assignment of title. Accordingly, if we say there can be no purchase without a title transfer, and that therefore, § 407.025 cannot apply, we must also conclude that there can be no purchase under § 301.210.4 without a title transfer, which would mean that the statute has no effect and would simply state a redundancy. In order for the statute to make sense, we have to say that it applies to *purchases* of vehicles without contemporaneous transfers of titles. Similarly, we can say that § 407.025 applies to *purchases* of vehicles in the same sense, whether such purchase is with or without a transfer of title. In other words, § 407.025 is concerned only with the substance of the transaction, not with whether the transaction is ultimately void and unenforceable as a matter of specific performance or of contract damages.

Appellants correctly distinguish *Jackson* as a case in which there was no purchase at all, even under the plain and every day meaning of the word purchase, because the plaintiff made no down payment on the Pontiac. She gave no consideration, because allowing someone to hold a title which has not been executed does not constitute legal consideration. The unexecut-

ed title was of no value to the seller. *Jackson*, 664 S.W.2d at 676. The dealer's promise to hold the Pontiac while Ms. Jackson found financing was a gratuitous, unenforceable promise.

If *Jackson* is distinguishable, and we agree that it is, we are left with no direct authority except *Minton*, which was based on *Jackson*, as to the applicability of § 407.025 to a transaction such as this. The appellants argue that, as a matter of statutory construction, the two statutes can be construed together in a way that effectuates the purposes of both statutes.

█ The respondent dealership in this case argues that *Minton* was properly decided as to § 407.025 and that the rule of the *Minton* case is necessary because of the public policy represented in § 301.210.4. Respondent argues that to give any other remedy than restitution in such an instance is to undermine the purposes of the title statute. He contends it will cause increased traffic in vehicles without contemporaneous transfers of title because people will know that the courts will enforce their contracts. We disagree. To allow application of § 407.025 against dealers who violate the law requiring contemporaneous assignment of certificate of title does not require a change of traditional law with regard to claims of conversion, specific performance or breach of contract. When parties enter into an illegal transaction with their eyes wide open, the law will not validate their transaction by enforcing the contract. *See Lebcowitz v. Simms*, 300 S.W.2d 827, 829 (Mo.App.1957).

█ In *Minton*, the plaintiff should not have delivered her $2500.00 to the dealer and then have allowed the dealer to retain the title as security for the additional $300.00. To have sustained her claim for conversion when the dealer took repossession of the car would have been to indirectly support an unlawful transaction. Therefore, she was held to be entitled only to restitution of her $2500.00. *Minton*, 944 S.W.2d at 256. So, too, it would not have been appropriate to allow her damages for breach of contract. If, however, Ms. Minton had paid the full price, and the dealer had falsely represented that the title was "being processed," when the dealer knew such statement was false, it would have been proper to allow an action under § 407.025 and in common law fraud for any damages caused thereby. *See Ferm v. Miller Pontiac Co.*, 407 S.W.2d 55 (Mo. App.1966) (court allowed fraud claim against dealer where dealer falsely represented that he had title and would deliver it). Such an action would not undermine the purposes of § 301.210.4. We believe it would further those purposes, because the dealer would be likely to take more care to follow the law in such transactions. The same thing is true of a common law fraud action brought against a dealer. Indeed, we conclude that denying an appropriate remedy for fraudulent actions would work against the interest of consumers, which is a group that both § 301.210.4 and § 407.025 were intended to assist. Section 310.210 was intended in part "to protect the innocent and guileless from the machinations and wiles of the wicked." *Minton*, 944 S.W.2d at 254 (quoting *Evens v. Home Ins. Co. of New York*, 231 Mo.App. 932, 82 S.W.2d 111, 116 (1935)). It is designed also to prevent fraud in the sale of used cars. *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 26 (Mo.1969). Accordingly, we hold that proper interpretation of § 301.210 and the implementation of the public policy expressed therein, is furthered by the allowance of claims under § 407.025, and also by the allowance of proper common law fraud claims against the dealer.[2]

2. We are not here deciding that *any* claim of false representation against a dealer may be maintained in a transaction in which title was not delivered. Rather, we hold only that common law fraud claims may be pursued when the primary fraud claim relates to a misrepresentation concerning the status or the delivery of title, and other claims of fraud related to the transaction are attendant thereto. It seems that in order to avoid undermining the public policy of § 301.210.4, a buyer who deliberately buys a motor vehicle without

The trial court in this case cannot be blamed for its reliance upon *Minton.* *Minton* was applicable authority. However, that case incorrectly concluded that §301.210.4 precluded an action under §407.025. Therefore, we overrule our analysis in *Minton* to the extent that it precludes the maintenance of an action under § 407.025 or of a common law fraud claim.

We reverse the grant of summary judgment as to the common law action of fraudulent misrepresentation and as to the claim under § 407.025. As to the Truth in Lending Act claim, which deals specifically with representations and non-disclosures in the contract related to the financing of the purchase, we find no authority justifying dismissal, other than the erroneous notion that allowing the claim would defeat the public policy reflected in § 301.210. For the reasons discussed above, we are not persuaded such claims are barred by § 301.210, with or without a contemporaneous assignment of certificate of title. Accordingly, we reverse the summary judgment award as to all claims and remand the claims to the trial court for further proceedings.

ELLIS and EDWIN H. SMITH, JJ., concur.

---

a contemporaneous assignment of title should not be entitled to complain of fraud in other aspects of the transaction if the buyer knew that no contemporaneous assignment of title would take place. The **result** in *Minton* was not necessarily incorrect, in that it is not clear that Ms.Minton was deceived in any way concerning the status of delivery of title. However, that part of the opinion suggesting that §301.210.4 precluded an action under §407.025 whenever there was no contemporaneous assignment of title was not correct.