**A & L HOLDING COMPANY,**
Respondent,

v.

**SOUTHERN PACIFIC
BANK, Appellant.**

No. WD 57888.

Missouri Court of Appeals,
Western District.

Submitted Oct. 11, 2000.

Decided Dec. 19, 2000.

**416**

Mark A. Reiter, William D. Cross, Kansas City, for appellant.

Robert O. Jester, Kansas City, for respondent.

Before SMART, P.J., ELLIS and LAURA DENVIR STITH, JJ.

PER CURIAM:

Appellant Southern Pacific Bank appeals from the trial court's grant of summary judgment to A & L Holding Company on grounds that Southern Pacific had breached its contractual duties under automobile dealer finance agreements.

### Factual Background

This case involves the transfer of contracts and security interests in the financing of used automobiles. While there are only two parties to this lawsuit, Southern Pacific and A & L Holding, there are several other parties and contracts in the chain of transactions that must be identified. Respondent A & L Holding Co. was the Plaintiff in this case. Four automobile dealers[1] assigned all their respective rights, title and interest in their claims against Appellant Southern Pacific Bank to A & L Holding.

---

1. The four dealers are Auto Bank of Kansas, Inc. (a Missouri corporation, with its principal place of business in Kansas City, Wyandotte County, Kansas), Auto Banc of North Oak, Inc. (Missouri corporation, Kansas City, Clay County, Missouri), Auto Banc of St. Joseph, Inc. (Missouri corporation, St. Joseph, Buchanan County, Missouri), and John Chezik Homerun, Inc., d/b/a John Chezik Honda (Missouri corporation, Kansas City, Clay County, Missouri).

Appellant Southern Pacific Bank is a banking institution with its principal place of business in Los Angeles, California. Goshen Fidelity, Inc., an Illinois corporation, was the agent of Southern Pacific Bank for the purchase of the retail installment contracts arising out of the sale of new and used vehicles by the automobile dealers to consumers. Goshen acted as the agent for Southern Pacific in the transactions which are the subject of this case. First American Acceptance Corporation ("FAAC"), a Delaware corporation doing business in Florida, is a broker of retail installment contracts and security agreements between auto dealers and lending institutions such as Southern Pacific. The relevant documents include a Retail Installment Contract and Security Agreement between a dealer and automobile buyer; Purchase and Sale Agreement (PSA) between FAAC and Goshen; and Dealer Agreement (DA) between Dealer and FAAC.

This case arose from transactions in which a dealer would sell a car pursuant to a Retail Installment Contract and Security Agreement. Most of the loans bear an annual percentage rate of over 20%. The dealer then typically assigns its interest in the Retail Installment Contract and Security Agreement (and accompanying documents) for its present value to FAAC pursuant to the dealer agreement. FAAC then assigns its interest in the Retail Installment Contract and Security Agreement (and accompanying documents) to Goshen, which in turn sells the contract to Southern Pacific. At each step the Retail Installment Contracts and Security Agreements (and accompanying documents) are sold at a profit. At some point, FAAC ceased to pay its obligations, and no payment was made to dealers by FAAC.

A & L Holding (as assignee of the unpaid dealers) sued Southern Pacific, claiming breach of contract and unjust enrichment. On May 28, 1999, Southern Pacific and A & L Holding jointly filed a stipulation of fact and accompanying documents with the trial court. Subsequently, Respondent/Plaintiff A & L Holding filed a motion for summary judgment on June 18, 1999. Appellant/Defendant Southern Pacific filed its motion for summary judgment on June 21, 1999. Each filed suggestions in opposition to the opposing motions for summary judgment. The trial court granted A & L's motion for summary judgment on the basis of breach of contract, and this appeal followed.

**Standard of Review**

■■■ The standard of review is controlled by *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Whether or not summary judgment was properly granted is an issue of law, and appellate review of the trial court's judgment is essentially *de novo. Id.* Because the trial court's judgment is based only on the record submitted and the law, we do not defer to the trial court's judgment in our review. *Antle v. Reynolds,* 15 S.W.3d 762, 764 (Mo.App.2000). While reviewing the record in the light most favorable to the party against judgment was entered; we examine the record to determine whether there is a dispute as to any material fact, and if not, whether the moving party was entitled to judgment as a matter of law. *Id. (citing to Dial v. Lathrop R–II School Dist.,* 871 S.W.2d 444, 446 (Mo. banc 1994)). In this case, because the parties filed a joint stipulation of facts, the only issue that remains is whether the trial court's judgment was correct as a matter of law.

Southern Pacific Bank's first point relied upon contends that the trial court erred in applying UCC Article 2 rather than Article 9 which deals with secured transactions. The Bank contends that if the court had applied Article 9, the court would have reached a different result. We need not decide that issue because we conclude that the Bank's second point on appeal is dispositive.

### Specific Clauses vs. General Clauses

In its second point, Southern Pacific argues that, in any event, regardless of the applicable UCC section, the trial court erred as a matter of law in granting A & L Holding's motion for summary judgment because when one contract clause is general and inclusive and another is more limited and specific, the more specific clause acts to modify and *pro tanto* nullify the more general clause. Southern Pacific argues that the express terms of the Purchase and Sale Agreement (PSA) between FAAC (Seller) and Goshen (Buyer) specified that FAAC was responsible for paying the dealers, and the general assignment language contained in the attached Exhibit C cannot supercede this specific obligation of FAAC.

Section 3.1 of the PSA (between FAAC and Goshen) states in relevant part:

> *Review and Approval of Contracts.* Seller [FAAC] shall deliver to Buyer [Goshen], on a Business Day (i) the Contract, (ii) the Related Documents, (iii) copies of the Vehicle Title Documentation, (iv) a fully executed Certificate of Assignment in respect of such Contract in the form of Exhibit "C" attached hereto and by this reference made a part hereof, and (v) such other appropriate transfer papers, assignments or other documents reasonably requested by Buyer with respect to the Collateral....

Exhibit "C" to the PSA states in relevant part as follows:

#### Certificate of Assignment

In consideration of Payment of the Purchase Price set forth below, the undersigned Seller [FAAC] hereby transfers, assigns and conveys to Goshen Fidelity Inc., a corporation, all of Seller's right, title and interest in and to the Contract described herein, together with the Collateral and Related Documents including the Dealer Agreement, in accordance with the terms and conditions of that Purchase and Sale Agreement between the parties dated as of January 31, 1998....

The trial court concluded that under § 2–210(4) of the Uniform Commercial Code, the assignment of "all ... right, title, and interest" in the contract constitutes a delegation of performance of the duties of the assignor under the contract.[2] The trial court concluded that the assignment placed the bank in the position of being required to perform the obligation of FAAC, which, pursuant to the dealer agreements, was to make payment to the dealers. Such a construction places the terms of § 3.1 of the PSA in direct conflict with § 3.2 of the PSA, which states in relevant part:

> *Payment to Dealer.* Seller [FAAC] shall pay to the Dealer the purchase price owing by Seller to Dealer for a particular Contract in not less than 24 hours, but, in any event not greater than 48 hours, (or, if upon the expiration of such 24 or 48 hours such day is not a Business Day, by 5 p.m. Eastern time, on the next succeeding Business Day) of Seller's receipt of the Purchase of such Contract from Buyer.

By its express terms § 3.2 requires FAAC to pay the Dealers. Section 3.1 by operation of Exhibit "C" (Certificate of Assignment) is therefore, according to this construction, in direct conflict with the express terms of § 3.2.

A conflict between two provisions in an agreement makes the agreement susceptible of two interpretations and therefore ambiguous. *Transit Cas. Co. v. Certain Underwriters*, 963 S.W.2d 392, 397 (Mo.App.1998) (citing *Sadler v. Board of Educ. of Cabool Sch. Dist., R–4*, 851

---

**2.** Section 2–210(4) provides in part:

An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights, and unless the language or the circumstances (as in an assigned for security) indicate the contrary, it is a delegation of performance of the duties of the assignor....

S.W.2d 707, 712 (Mo.App.1993)). In such a situation "[i]t is a good principle of contract construction, that language which deals with a specific situation prevails over more general provisions if there is ambiguity or inconsistency between them." *H.B. Oppenheimer & Co. v. Prudential Ins. Co.,* 876 S.W.2d 629, 632 (Mo.App.1994). Indeed, "[g]enerally, in the construction of contracts, it is held that if the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should be held to operate as a modification and *pro tanto* nullification of the former." *Surface v. Ranger Ins. Co.,* 526 S.W.2d 44, 48 (Mo. App.1975). "And finally, a construction attributing a reasonable meaning to each phrase and clause, and harmonizing all provisions of the agreement is preferred to one which leaves some of the provisions without function or sense." *Transit,* 963 S.W.2d at 397 (citing *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 718 (Mo.App.1995)).

 In this case we have two provisions in the contract which appear to conflict. Exhibit "C" of § 3.1 of the PSA is a general provision, which purports to assign all of FAAC's rights under the contract to Goshen, Appellant Southern Pacific Bank's agent. According to the view of the trial court, this provision also constitutes a delegation of duty to the Bank to pay the dealers. Section 3.2 of the PSA, however, is a specific provision of the contract requiring FAAC to pay the dealer's the purchase price of the contract. In applying the rules of contract construction as previously set forth, we hold that even if there is an apparent conflict between the two provisions as to who is obligated to make payment to the dealers, the more specific provision of § 3.2 of the PSA controls and operates to modify the more general provi-

sion of Exhibit "C" and § 3.1 of the PSA, thus harmonizing the provisions.

Even if Article 2 of the UCC were applicable here (and we do not decide that it is), this principle of construction would dictate a finding that there was no delegation of duty to the bank. That is because § 2-210(4) provides that a general assignment constitutes a delegation *unless the language or the circumstances indicate otherwise.* Here, the language of the agreement indicates otherwise because it states in § 3.2 that FAAC is to make payment to the dealers.

A & L Holding argues that because there was an assignment pursuant to Exhibit "C" of FAAC's interest to Southern Pacific's agent, all that this court should do is substitute the bank (or Goshen, the bank's agent) wherever the contract reads FAAC. We find that argument unpersuasive in that it is illogical to conclude that the drafter of the contract would provide in § 3.1 for a transfer of responsibility to the Bank, and then in § 3.2 contradict that transfer of responsibility by specifically providing that FAAC will pay the dealers. The best way to harmonize the two provisions is to find that in § 3.1 the responsibility to pay the dealers was not included within the general assignment. The responsibility to pay the dealers was specifically addressed in § 3.2. Accordingly, we hold that the trial court erred in awarding summary judgment in favor of A & L Holding.

### Conclusion

We reverse the judgment and remand the case for further proceedings.[3]

---

**3.** In the trial court, the facts were stipulated and both parties filed motions for summary judgment. The trial court on remand will be

able to take up and consider Southern Pacific's motion for summary judgment.