# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-1181

———————

Byther Mae Williams;                                  *
Richard V. Fink,                                      *
                                                      *
            Appellants,                               *    Appeal from the United States
                                                      *    District Court for the
      v.                                              *    Western District of Missouri.
                                                      *
Regency Financial Corp.,                              *
                                                      *
            Appellee.                                 *

———————

Submitted:  September 12, 2002

Filed:  November 1, 2002

———————

Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
      BOGUE,[1] District Judge.

———————

WOLLMAN, Circuit Judge.

Regency Financial Corporation (Regency) filed a deficiency claim against Byther Mae Williams (Williams) in her Chapter 13 bankruptcy proceedings. Williams responded with a five-count adversary complaint against Regency, alleging violations of sections 400.9-504 and 400.9-507 of the Missouri Uniform Commercial

———————

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

Code (U.C.C.) and of the Missouri Merchandising Practices Act (MPA). Following jury selection, the district court granted judgment as a matter of law in favor of Regency on Counts I, II, and III of Williams' complaint. The district court transferred Counts IV and V to the bankruptcy court pursuant to 28 U.S.C. § 157(b)(1). Williams appeals the district court's adverse judgment concerning Counts I through III. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Regency and FPI are closely connected corporations started in 1994 by Tom Moore and Neil Erisman respectively, having interlocking management and ownership. They are located in the same building and share employees. Regency and FPI operate a "buy here, pay here" establishment, colloquially referred to by Williams as a repossession churning mill. FPI sells used cars at retail for at least twice their cost. Regency finances the purchases. The majority of buyers finance their car purchases by Purchase Money Security Agreements (PMSAs) bearing 18% interest. FPI sells or assigns the PMSAs to Regency at a 35% discount. When a debtor defaults, FPI repossesses the car on Regency's behalf. Regency then sells the repossessed car back to FPI at a price determined by FPI personnel, which is lower than the amount owed by the debtor at the time of repossession, thereby creating a deficiency. FPI then sells the car to another buyer, beginning the cycle again. Frequently, the cars are sold without Regency's having procured a repossession title.

Regency employs an attorney on its premises to file lawsuits to recover deficiencies resulting from the difference between the balance owed on the PMSA and the amount paid by FPI to Regency for the car. As of October 2002, Regency had filed more than 1,800 such actions against individuals within Jackson County, Missouri, alone. Missouri Case.Net, *available at* http://casenet.osca.state.mo.us/casenet/CasenetV4.3/NameResults.asp?LastName=RegencyFinancialCorp.

In June 1994, Williams and her late husband purchased a 1987 Oldsmobile from FPI for $7,995.00. Williams paid FPI a down payment of $800.00; the balance of the purchase price was financed by a Motor Vehicle Sales Contract (MVSC) and a PMSA bearing 18% interest, which FPI then sold to Regency. At the time of the purchase, Williams signed a power of attorney to FPI.

In 1995, Williams returned the 1987 Oldsmobile to Regency after having paid Regency $4,750.00. Regency sent Williams a Notice of Private Sale pertaining to the Oldsmobile that stated a "Pay Off Balance" due of $3,851.63, plus a "Repossession Cost" of $150.00, totaling $4,021.63. (The parties do not explain the basis of the extra $20.00.) Regency claims to have sold the Oldsmobile to FPI for $3,550.00, leaving Williams a deficiency of $471.63.

Regency did not obtain a repossession title for the Oldsmobile from the Missouri Department of Revenue. Instead, Regency released its lien on the Oldsmobile. In December 1995, a representative of FPI assigned the Oldsmobile's title to FPI pursuant to the Williams' June 1994 grant of power of attorney. In January 1996, FPI assigned the Oldsmobile's title to James Thurman and James King. Thurman and King purchased the 1987 Oldsmobile for $7,935.00, financed by a PMSA. They paid $4,385.00 more for the car than FPI had paid to Regency for the same vehicle one month earlier.

Williams later purchased a 1986 Cadillac from FPI. After having paid $720.00, Williams voluntarily returned the car to Regency. Regency sent Williams a Notice of Private Sale that stated the balance due. Regency sold the repossessed Cadillac to FPI, and FPI auctioned the vehicle.

In 1999, Regency filed a deficiency claim for $614.37 on the Oldsmobile in Williams' Chapter 13 proceedings. Williams filed an adversary complaint against Regency. Regency denied Counts I and II of the complaint, which addressed

Regency's transactions with respect to the 1987 Oldsmobile and are at issue here, and dismissed its deficiency claim.

## II. JURISDICTION

Regency contends that Williams' appeal, notice of which was filed on December 27, 2001, is untimely because the district court order issued on November 5, 2001, began the thirty days in which Williams could timely file an appeal. We disagree. The November 5 order reversed the bankruptcy court's judgment denying Williams the relief sought in Counts IV and V of her complaint. Those counts are not at issue in this appeal; they have been transferred to the bankruptcy court. The district court judgment in favor of Regency, which Williams appeals here, was entered on November 27, 2001. The date on which the district court's final judgment is entered is the date from which a party has thirty days in which to timely file an appeal. Fed. R. Civ. P. 58; see United States v. Interlink Sys., Inc., 984 F.2d 79, 81-82 (2d Cir. 1993) (holding appeal of judgment entered two years after district court's order was timely made). Because Williams filed the notice of appeal within thirty days from November 27, 2001, her appeal is timely. Fed. R. App. P. 4(1)(a). Accordingly, we have jurisdiction to hear this appeal. 28 U.S.C. § 1291.

## III.  DISCUSSION

### A. U.C.C.

Williams brought an action against Regency pursuant to section 400.9-507 of the Missouri Code, asserting that Regency's 1995 post-repossession sale of the 1987 Oldsmobile to FPI was commercially unreasonable and thus violated section 400.9-504. Mo. Rev. Stat. §§ 400.9-504, 507 (1996). Section 400.9-504 requires that the "sale or other disposition" of collateral by a secured party after default must be "commercially reasonable" and enumerates the manner in which the proceeds of the

-4-

sale or disposition are to be applied. Mo. Rev. Stat. § 400.9-504(1), (3). The district court held that Williams could not obtain a surplus judgment nor Regency a default judgment because a valid sale of the vehicle had not occurred: Regency's transfer of the 1987 Oldsmobile to FPI without first having obtained a repossession title violated Missouri's motor vehicle titling statute, section 301.210 of the Missouri Code, and thus was void. Id.; Mo. Rev. Stat. § 301.210.

Williams contends that because Regency's transfer to FPI constituted a disposition, the question of whether Regency's disposition of the 1987 Oldsmobile was commercially reasonable is for a jury to decide. We agree.

Section 400.9-504 provides,

> (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition . . . . (3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. . . . [E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

Mo. Rev. Stat. § 400.9-504. Under Missouri law, "[t]he provisions of the [Uniform Commercial] Code are to be liberally construed." Computer Network Ltd. v. Purcell Tire & Rubber Co., 747 S.W.2d 669, 674 (Mo. Ct. App. 1988). When interpreting a statute, we take as our point of departure the statute's language. United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979) (citation omitted); United States v. Parker, 267 F.3d 839, 847 (8th Cir. 2001). "When the meaning of a statute is questionable, it should be given a sensible

construction and construed to effectuate the underlying purposes of the law." S.A., 129 F.3d at 998.

The secured transaction provisions at issue here were intended to ensure that upon default, a secured party "sell, lease or otherwise dispose" of collateral in good faith and in a commercially reasonable manner, and that debtors and creditors be provided a remedy for a party's failure to comply with statutory duties. Mo. Rev. Stat. §§ 400.9-504, 400.9-507 cmt. The inclusion of the term "disposition" in section 400.9-504 indicates both that the terms "sale" and "disposition" are not intended to be synonymous, and that a disposition of collateral need not necessarily be in the form of a sale. Mo. Rev. Stat. 400.9-504. The comment to section 400.9-504 provides, "Subsection (1) does not restrict disposition to sale: the collateral may be sold, leased, or otherwise disposed of--subject of course to the general requirements of subsection (2) that all aspects of the disposition be 'commercially reasonable.'" Id. cmt. Although Missouri case law has neither defined nor interpreted "disposition," "where there is a paucity of Missouri case law interpreting a provision of the U.C.C., [Missouri] courts . . . look for guidance to decisions of other jurisdictions . . . ." Robinson v. Citicorp Nat'l Servs., 921 S.W.2d 52, 54 (Mo. Ct. App. 1996) (citation omitted). Courts in other jurisdictions have similarly interpreted the term "disposition" in their respective enactments of this and related U.C.C. provisions as not being limited to valid sales.

> The word "sale" implies the passage of absolute title . . . .
> "A sale consists in the passing of title from the seller to the
> buyer for a price."
>
> The phrase "other disposition" implies the parting with,
> alienation or giving up [of] property and [was] intended to
> include conveyances other than sales such as gift,
> assignment, abandonment, barter, exchange, or destruction
> . . . [and] transfer for permanent possession . . . .

-6-

*In re* the Estate of Mark Rothko, 379 N.Y.S.2d 923, 958 (1975), *aff'd sub nom*, Rothko v. Reis, 372 N.E.2d 291 (N.Y. 1997) (finding that "shipment to alleged purchasers for their permanent possession or permanent control" is within the meaning of otherwise dispose under the U.C.C.) (citations omitted); Mechanics Nat'l Bank of Worcester v. Gaucher, 386 N.E.2d 1052, 1055 (Mass. App. Ct. 1979) ("Disposition implies a permanent transfer of possession."); Cordova v. Lee Galles Oldsmobile, Inc., 668 P.2d 320, 323 (N.M. Ct. App. 1983) (holding a temporary loan does not constitute a disposition under U.C.C. Article 9 because disposition means "a permanent transfer of possession"); see also Midwest Bank & Trust Co. v. Roderick, 476 N.E.2d 1326, 1331 (Ill. App. Ct. 1985) ("[T]he only reasonable interpretation of the [U.C.C.] is that 'other disposition' is intended to encompass all types of financial arrangements . . ."). Thus, "disposition" for the purposes of the U.C.C. Article 9 provisions is not limited to valid sales, but includes the transaction by which Regency permanently transferred possession of the 1987 Oldsmobile to FPI. Without having first obtained a repossession title, Regency relinquished its lien on the vehicle, effectively selling the Oldsmobile to FPI for $3,550.00.

Because "disposition" encompasses the transaction by which Regency permanently transferred the 1987 Oldsmobile to FPI, whether Regency disposed of the 1987 Oldsmobile in a commercially reasonable manner presents a genuine issue of material fact for a jury to determine. To hold that a transaction that is not a legally valid sale under section 301.210 cannot give rise to a cause of action under the U.C.C. would leave without legal recourse those individuals who have been adversely affected by transactions such as that perpetuated by Regency and FPI, in which cars routinely are "sold" without title in violation of section 301.210. Such an outcome would defeat the purpose of the Missouri U.C.C. and section 301.210, which is "to protect the innocent and guileless from the machinations and wiles of the wicked." Antle v. Reynolds, 15 S.W.3d 762, 767 (Mo. Ct. App. 2000) (citation omitted). Furthermore, to hold that Regency's violation of section 301.210 barred Williams' claim under the U.C.C. provisions would require us to conclude that "there can be no

purchase [or sale] under [section] 301.210.4 without a title transfer, which would mean that the statute has no effect and would simply state a redundancy. In order for the statute to make sense, we have to say that it applies to purchases [and sales] of vehicles without contemporaneous transfers of title." Id. at 766. Accordingly, we reverse the district court and remand for a new trial on this issue.

## B. MPA

Williams contends that Regency's violations of the Missouri U.C.C. Article Nine provisions and the title statute, section 310.210, support a claim under the MPA. Mo. Rev. Stat. § 407.020. Williams argues that Regency's violations of the foregoing provisions constituted an "unfair practice" resulting in a quantifiable loss–that of the surplus that would have resulted from a commercially reasonable sale of the Oldsmobile.

Section 407.020 proscribes the use or employment of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." Id. Williams points out that Missouri courts construe "unfair practice" under 407.020 as "unrestricted, all-encompassing and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." Ports Petroleum Co., Inc. v. Nixon, 37 S.W.3d 237, 240 (Mo. 2001); Mo. Code Regs. Ann. 15 § 60-8.02 ("(1) An unfair practice is a practice which–(A) Either–1. Offends any public policy as it has been established by the Constitution, statutes, or common law of this state . . .; or 2. Is unethical, oppressive or unscrupulous; and (B) Presents a risk of, or causes, substantial injury to consumers."). Despite the broad construction given the phrase "unfair practice," the MPA provides a remedy only for "unfair practices" that are connected "with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020. The MPA provisions have been interpreted as providing a remedy to

consumers who have been victims of the proscribed statutory conduct in connection with a violation of the title statute. <u>Antle</u>, 15 S.W.3d at 767-68 (holding that claims brought under § 407.025 to redress violations of § 407.020 are not barred by § 301.210, "with or without contemporaneous assignment of certificate of title"). Regency's alleged violations of the U.C.C. and the title statute occurred in its transaction with FPI, not in conjunction with a sale or advertisement to Williams. We have found no Missouri cases, nor have the parties cited any, in which one who is not a direct party to the "sale or advertisement" in which the "unfair practice" or otherwise violative conduct occurs has been held to have a cause of action under the MPA. We do not believe that the Missouri legislature intended to include Regency's transaction with FPI as conduct that could be remedied by the MPA. Accordingly, the MPA does not provide Williams a means by which to redress Regency's disposition of her collateral to FPI. We therefore affirm the district court's judgment dismissing Williams's MPA claim.

## IV. CONCLUSION

The judgment is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with the views set forth in this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-